Charles L. PATTERSON *v.* STATE of Arkansas

CR 94-412                                                 885 S.W.2d 667

Supreme Court of Arkansas
Opinion delivered October 24, 1994
[Rehearing denied December 5, 1994.*]

*Holt, C.J., would grant rehearing.

*G. Keith Watkins*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Charles L. Patterson was charged in a four-count information with aggravated robbery, burglary, and two counts of theft of property. The crimes were committed in Independence County and the information was filed there, but the trial judge granted a change of venue to Fulton County. This change was granted in part because the four crimes were allegedly committed by appellant while he was on furlough from a forty-year sentence in the Arkansas Department of Corrections and because appellant allegedly committed other crimes in Independence County. Appellant was convicted on all four counts and was sentenced to life imprisonment for the aggravated robbery, twenty years for the burglary, fifteen years for one of the thefts, and ten years on the other theft. A total of $40,000.00 in fines was assessed. The two sentences for the thefts were ordered to be run concurrently, while all others were ordered to run consecutively. The result is that appellant received sentences of life plus thirty-five years and was fined. He appeals from all four convictions. There was no reversible error, and we affirm.

Appellant's first assignment is that the trial judge erred in refusing to dismiss all charges because of violation of the speedy trial rules. The trial judge ruled correctly. The four-count information was filed, and arrest warrants were issued, on June 19, 1992. That same day, appellant was arrested by federal officials in Odessa, Texas on separate federal charges. The federal authorities held appellant to answer charges in United States district courts in Colorado and Eastern Arkansas. On October 20, 1992, appellant was convicted in the United States District Court, Colorado District, of aircraft piracy, interference with a flight crew member, interstate transportation of a stolen aircraft, possession of a firearm by a convicted felon, and use of a firearm in relation to a crime of violence. He was sentenced to two hundred forty months in the United States Penitentiary at Leavenworth, Kansas. The next day, October 21, the prosecuting attorney wrote the circuit judge that appellant was being held by federal authorities for an additional federal trial in the Eastern District of Arkansas. The prosecuting attorney subsequently filed a detainer against appellant with the Federal Bureau of Prisons. On June 24, 1993, the Leavenworth Inmate Systems Manager notified the

prosecuting attorney that appellant was currently out on a federal writ and would be notified of the detainer when he was returned to Leavenworth. Evidently the federal writ was issued to transport appellant to Arkansas because, on July 6, 1993, the United States District Court for the Eastern District of Arkansas found appellant guilty of air piracy and sentenced him to an additional three hundred thirty months at the federal penitentiary in Leavenworth.

The detainer warrant was served on appellant. On August 30, 1993, appellant was transported to Independence County for trial on the state charges. The warrants of arrest were served that day, and the next day, August 31, 1993, an arraignment was held and counsel was appointed. The trial court asked appellant's appointed counsel if the next session of court in Fulton County, which would begin on October 25, was an agreeable trial date and counsel responded affirmatively. The trial court then set October 25, 1993, as the trial date. On October 20, 1993, appellant filed a motion to dismiss alleging that his right to a speedy trial had been violated. The motion was denied, and appellant's trial commenced on October 25, 1993.

■■ The general rule is that an accused's trial must be held within twelve months of the date the charges are filed. A.R.Cr.P. Rule 28.2(a). It is undisputed that appellant's trial began sixteen months and six days after the charges were filed, or four months and six days beyond the twelve-month period. Once it is shown that the accused's trial took place outside the twelve-month period, the State must show that the delay was justified under the rules of criminal procedure. *Wallace* v. *State*, 314 Ark. 247, 862 S.W.2d 235 (1993). However, Rule 28.2 is interrelated with Rule 28.3, which sets out the periods of delay that "shall" be excluded in computing time for a speedy trial. Subsection (a) excludes a "period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . trials of other charges against the defendant." A.R.Cr.P. Rule 28.3(a).

■ A period of delay resulting from "trial of other charges against the defendant" in a foreign jurisdiction commences when the accused is taken to the foreign jurisdiction and ends when the trial in that jurisdiction is completed and the accused becomes available for extradition. *Allen* v. *State*, 294 Ark. 209, 742 S.W.2d

886 (1988). In this case appellant was arrested by the federal authorities on June 19, 1992, and held for the first of his two federal trials, the one in the federal district court of Colorado. That trial ended on October 20, 1992. We do not know when appellant was transferred to the Leavenworth penitentiary and became available for extradition. However, if we use the date the trial ended as the date he became available, we find an excludable period resulting from "trials of other charges" that began June 19, 1992 and ended October 20, 1992; a total of four months and one day. Since the trial in the case at bar was only four months and six days outside the speedy trial period, the State only had to show another five days of excludable time. The additional excludable time was attributable to the other federal trial. On June 24, 1993, the Inmate Systems Manager of the federal penitentiary in Leavenworth advised the prosecuting attorney that appellant was "currently out on a federal writ" and probably would not be available on July 30, 1993. Appellant was then convicted of air piracy in the United States District Court for the Eastern District of Arkansas on July 6, 1993. This period, from June 24 to July 6, constituted an additional excludable period in excess of five days. In addition, appellant's attorney agreed to the October 25, 1993 trial date. Thus, the trial court did not err in denying the motion to dismiss for lack of a speedy trial.

██ In a related argument appellant contends that he was not tried within the time required by the Interstate Agreement on Detainers. *See* Ark. Code Ann. §§ 16-95-101 to -107 (1987). This Act provides that, after a prisoner in another jurisdiction is notified that a detainer has been filed against him, he may send the prosecuting attorney notification of his place of imprisonment and request that a final disposition be made of the charges filed against him in this State. *See* Ark. Code Ann. § 16-95-101, Article III(a) (1987). At that point, this State has one hundred eighty days to bring him to trial or the charges must be dismissed. *Id.; see also Hicks* v. *Gravett*, 312 Ark. 407, 849 S.W.2d 946 (1993). Since appellant made no demand for trial in compliance with Article III(a), there was no violation of the Interstate Agreement on Detainers. *Walker* v. *State*, 263 Ark. 485, 565 S.W.2d 605 (1978).

█ Appellant is procedurally barred from his next point of appeal. In it he argues that the trial court erred in denying his motion to strike a juror for cause. However, at the time the court

denied his motion he had five peremptory strikes and did not use one of those strikes on the juror. In order to preserve for appeal an objection to an empaneled juror, a party is required to have exhausted his peremptory challenges and must show that he was forced to accept a juror who should have been excused for cause. *Stanley* v. *State*, 317 Ark. 32, 875 S.W.2d 504 (1994).

Appellant's final argument involves an evidentiary ruling. Appellant called Ralph Garcia to the stand and asked him if one of the victims had made any statements to him about this incident. The trial court sustained the State's objection based on hearsay. Appellant contends the answer should have been admitted as an inconsistent statement under Rule 613 of the Arkansas Rules of Evidence.

In order for this court to hold that evidence was improperly excluded, appellant must have made a proffer of the evidence under Rule 103. *Parker* v. *State*, 268 Ark. 441, 597 S.W.2d 586 (1980). There was no proffer and the substance of the answer is not apparent. Therefore, we have no way of knowing whether the answer would have revealed an inconsistent statement. *See* A.R.E. Rule 103(a)(2). In addition, while extrinsic evidence of prior inconsistent statements is admissible for impeachment purposes under Rule 613(b), such evidence may not be admitted until the witness to be impeached has first been given an opportunity to explain or deny the statement. *Chism* v. *State*, 273 Ark. 1, 616 S.W.2d 728 (1981). There is no showing that the victim was ever asked about a possible inconsistent statement.

Appellant received a life sentence. As a result, the record has been examined for any other rulings adverse to appellant that might constitute reversible error. *See* Ark. Sup. Ct. R. 4-3(h). No other adverse rulings constitute reversible error.

Affirmed.

HOLT, C.J., dissents.

JACK HOLT, Jr., Chief Justice, dissenting. I must register my dissent in this matter because I believe that the State showed a lack of due diligence in securing Patterson's return to Arkansas from incarceration in federal prison in Kansas and that a prejudicial speedy-trial violation thus occurred. The conviction should be reversed and dismissed. As the majority opinion devotes lit-

tle attention to the underlying facts, it is necessary to set them forth in some detail.

*Facts*

On April 10, 1992, Ed and Alma Ward, residents of Batesville, in Independence County, Arkansas, reported that a man they identified as Charles L. Patterson had broken into their house and held them at gunpoint, demanding money. The Wards stated that Patterson called them by name and told them he was "on the run" and knew they had money in the house. Mrs. Ward told him that there was some money in a chest drawer. After finding the cash, Patterson asked for the keys to the Wards' car and left their residence driving their 1990 Cadillac.

Thereafter, the following occurred:

*June 19, 1992* — The Independence County Circuit Court issued an information and a bench warrant for Patterson's arrest, charging him with burglary, aggravated robbery, and theft of property.

*June 19, 1992* — Federal authorities arrested Patterson in Odessa, Texas.

*September 15, 1992* — Patterson was tried on federal charges in the United States District Court of Colorado.

*October 20, 1992* — Patterson was found guilty in the Colorado federal district court.

*October 21, 1992* — Prosecuting Attorney Don McSpadden sent Independence County Circuit Judge John Dan Kemp a letter indicating his intent to amend the information to charge Patterson as a habitual criminal and outlining his status as a convicted federal prisoner (Colorado) awaiting trial in another federal jurisdiction (Arkansas); the prosecutor signaled his intent not to take any action to obtain custody prior to January 1, 1993.

*March 22, 1993* — Patterson was tried and convicted on federal charges in the United States District Court for the Eastern District of Arkansas.

*June 24, 1993* — The Prosecuting Attorney for the

Sixteenth Judicial District of the State of Arkansas filed a detainer against Patterson, charging him with aggravated robbery, burglary, and theft of property.

*June 24, 1993* — A detainer-action letter was sent by the inmate systems manager of the United States Penitentiary in Leavenworth, Kansas, to the prosecutor's office in Batesville, Arkansas, acknowledging the filing of the detainer; simultaneously, a memorandum was sent by a legal technician at the Leavenworth facility to the deputy prosecutor in Bateville, informing him that Patterson was "currently out on a federal writ" and would probably not be available on July 30, 1993 (presumably the date on which the State of Arkansas had hoped to obtain custody).

*August 30, 1993* — Patterson was transported to Independence County, Arkansas, from Kansas and was served with a copy of the bench warrant.

*August 31, 1993* — An arraignment was held in the Independence County Circuit Court, and a trial date of October 25, 1993, was set.

*October 20, 1993* — Patterson filed a motion to dismiss for denial of speedy trial, arguing that because more than one year had passed between the time the State filed charges against him and the time the State filed its detainer, the time provisions of the Interstate Agreement on Detainers Act could not operate to extend the twelve-month period prescribed for speedy trial under Ark. R. Crim. P. 28.

*October 22, 1993* — The Independence County Circuit Court denied the motion, finding that the "delay of approximately twelve months and seventeen days was due to Patterson's trial on another charge" (the federal proceedings in Colorado and Arkansas); that Patterson had failed to lodge a written notice and request for final disposition of the Arkansas charges as required under the Interstate Agreement on Detainers; and that there was no showing of prejudice to Patterson occasioned by the delay.

*October 25, 1993* — Following the granting of a defense motion for change of venue, Patterson was tried in

Fulton County, Arkansas, and convicted and received consecutive sentences on the charges of aggravated robbery (life imprisonment), burglary (twenty years), and theft (fifteen years).

These circumstances are critical for an understanding of the due process and speedy trial violations.

### Due process and speedy trial

Patterson was charged with burglary, aggravated robbery, and theft on June 19, 1992, and his trial was held on October 25, 1993, a period amounting to sixteen months and six days. In the only argument for reversal we need consider, Patterson contends that he was denied his rights to due process and speedy trial, as set forth in the Constitutions of the United States, the State of Arkansas, and the Arkansas Rules of Criminal Procedure. We agree.

According to Patterson, his due process rights were violated by the State when, some twelve months after Arkansas charges were filed against him, it filed a detainer with federal authorities on June 24, 1993, without notifying him of the charges against him or advising him of his rights. He asserts that the State was negligent and did not follow the established procedure for notifying authorities and defendants of pending charges as set forth in the Interstate Agreement on Detainers Act, Ark. Code Ann. § 16-95-101 (1987).[1]

In a letter dated October 21, 1992, Prosecuting Attorney Don McSpadden informed Circuit Judge John Dan Kemp that:

Mr. Patterson has just recently been found guilty and sentenced in the Colorado Federal District Court on Federal charges. He awaits trial in Federal Court in Arkansas. Since the Federal guidelines call for a more readily and speedy trial than State guidelines, I would assume that the Federal people will have an opportunity to try Mr. Patterson prior to the State charges.

---

[1] For purposes of the Interstate Agreement on Detainers Act, a detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising the proper authority that the prisoner is wanted to face charges in another jurisdiction. *Hicks* v. *Gravett*, 312 Ark. 407, 849 S.W.2d 946 (1993).

> Even if he is not tried on the Federal charges I do not see how he can be brought to trial prior to January 1, 1993.

There is nothing in the record to suggest that, prior to filing the detainer on June 24, 1993, the State endeavored in any way to obtain custody of Patterson. The prosecutor's letter to the circuit judge, written a day after Patterson's Colorado federal conviction, merely expresses the assumption that Patterson would be unavailable before January 1, 1993, and amounts to a declaration of the State's abandonment, for the immediate future, of any effort whatsoever to secure his person for trial. The detainer was actually filed *before* Patterson's July 6, 1993 sentencing on federal charges in Arkansas, while he was still being held in Leavenworth. Yet nothing is presented to explain why, if the detainer was filed nearly two weeks before the second conviction, it could not have been filed yet earlier — for example, after the March 22, 1993 trial in federal court in Arkansas or, for that matter, after the October 20, 1992 conviction in federal court in Colorado. The State obviously had been aware since at least October 21, 1992, that Patterson was in federal custody.

Under Article III(a) of the Interstate Agreement on Detainers, Ark. Code Ann. § 16-95-101, a party is entitled to trial within 180 days only "after he shall have caused to be delivered to the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint. . . ." Therefore, Patterson's failure to deliver notice of his request for trial on the Arkansas charges rendered the 180-day time period prescribed by the Interstate Agreement on Detainers inoperable. *See Walker* v. *State,* 263 Ark. 485, 565 S.W.2d 605 (1978).

Still, the timing of the filing of the detainer remains relevant to this court's determination of the speedy-trial question. The limitation to prosecution under Ark. R. Crim. P. 28.1(c) is a period of twelve months, subject to certain periods to be excluded in computing the time for trial. Among the excluded periods provided for in Ark. R. Crim. P. 28.3 are the following:

> (a) The period of delay resulting from *other proceedings* concerning the defendant, including but not limited to an examination and hearing on the competency of

the defendant and the period during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals, and trials of other charges against the defendant. . . .

(e) The period of delay resulting from the absence or unavailability of the defendant. A defendant shall be considered absent whenever his whereabouts are unknown. A defendant shall also be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial.

(Emphasis added.) We have said many times that the State bears the burden of showing that any delay was caused by the defendant's conduct or was otherwise legally justified. *Matthews* v. *State*, 313 Ark. 327, 854 S.W.2d 339 (1993); *Rhodes* v. *Capeheart,* 313 Ark. 16, 852 S.W.2d 118 (1993); *Glover* v. *State,* 307 Ark. 1, 817 S.W.2d 409 (1991).

In denying the speedy-trial motion on October 22, 1993, the circuit court found that the "delay of approximately twelve months and seventeen days was due to Patterson's trial on another charge" — specifically, the federal proceedings in Colorado and Arkansas — and thus excludable. The circuit court also found no showing of prejudice to Patterson occasioned by the delay. In addition, the court found that:

Although Patterson had the opportunity following his arrest by federal authorities to obtain his return to Arkansas to obtain his "speedy trial" by lodging a written notice and request for final disposition of these Arkansas charges under Article III of the Interstate Agreement on Detainers (A.C.A. § 16-95-101 et seq.), he chose not to file a request. This section cannot apply where no demand for trial was ever made by the defendant in compliance with Article III(a).

Further, the circuit court made a finding of unavailability because Patterson "was awaiting trial and sentencing on the federal charges in Colorado and Arkansas."

The trial court cited, as authority for its ruling, *Young* v.

*Mabry*, 471 F.Supp. 553 (E.D. Ark. 1978), *aff'd* 596 F.2d 339 (8th Cir. 1979), *cert. denied* 444 U.S. 853 (1979). That case points out that Article VI(a) of the Interstate Agreement on Detainers contains the key words for determining the duration of excludable periods under Article III: "whenever and for as long as the prisoner is *unable to stand trial.* . . ." The federal court noted that "interpretive authority as to their legal construction is scant." 471 F.Supp. at 561. However, the district court turned to other federal cases that indicated "that the statutory time limits should be tolled during those periods when a prisoner is removed from the custodial place of incarceration and taken to another jurisdiction, other than the demanding jurisdiction, to stand trial on charges pending there." *Id.*

The problem with applying *Young* v. *Mabry* to the present set of circumstances is that, here, Patterson had been found guilty in the Colorado district court on October 20, 1992, and evidently was incarcerated in Leavenworth for the entire period up to his trial on March 22, 1993, in the eastern district court in Arkansas, and during the period following that trial and up to his sentencing on July 6, 1993. The record is completely void of any reference to the specific number of days that Patterson was in actual attendance in the federal courts. Neither is there any indication in the record of the number of days during which Patterson was engaged in hearings on pretrial motions, interlocutory appeals, or other "proceedings" revolving around his federal trials. The only evidence of the duration of his federal custody was the judgment entered by the Colorado District Court, which noted that "Defendant shall receive credit for 124 days spent in federal custody." Patterson was simply not unavailable under Rule 28.3(e), and the State failed to sustain its burden of showing that the delay in securing Patterson's return to Arkansas was due to the prisoner's actions. *See Walker* v. *State, supra.*

This brings us to the question of whether the entire period during which Patterson was in federal custody can be comprehended under the term "other proceedings" in Rule 28.3(a). The answer is no. Subsection (a), by its phrasing, clearly indicates that "other proceedings" consist of actual trials on other charges or ancillary hearings, examinations, and interlocutory appeals. It is obvious that "other proceedings" under Rule 28.3(a) do not include periods of incarceration subsequent to trial. Indeed, had

we intended that periods of incarceration should be generically excludable, we would have added the unqualified term to the rule.

The majority's reliance on *Allen* v. *State*, 294 Ark. 209, 742 S.W.2d 886 (1988), is misplaced. That case involved a defendant who actively resisted being returned from Arkansas from Texas by refusing to sign a waiver of extradition. (At the same time, he fought extradition to Tennessee on another charge.) As a result, both Arkansas and Texas were burdened with time-consuming extradition proceedings, and the delay was held properly chargeable to Allen. In the present case, there was no resistance on Patterson's part; there was simply little action on the State's part.

Thus, the fact that the nine-month-and-twenty-one-day period from September 15, 1992, to July 6, 1993, encompassed certain federal "proceedings" (*i.e.*, trials and sentencing) in Colorado and Arkansas does not, in itself, adequately account for the State's inaction for nearly the entire duration of Patterson's federal incarceration. Fundamental fairness requires that prosecuting authorities act in good faith and with due diligence in bringing a defendant to trial in Arkansas once it has been brought to their attention that the defendant is being detained outside the state or in a federal prison of jail. *See State* v. *Anderson*, 121 Wash.2d 852, 855 P.2d 671 (Wash. 1993). Here, the prosecutor's letter of October 21, 1993, offers confirmation in the most concrete manner that the State was aware Patterson was in federal prison following his conviction in the Colorado district court and that the State nevertheless elected not to file a detainer or to make other exertions to bring him to trial in Arkansas.

In light of the inapplicability of the Interstate Agreement on Detainers Act, our rules of criminal procedure required that Patterson have been brought to trial in Arkansas within twelve months, excluding periods of necessary delay. Ark. R. Crim. P. 28.1. The circuit court's finding that the time Patterson spent in federal custody warranted the exclusion of twelve months and seventeen days was wrong. Patterson's convictions for aggravated robbery, burglary, and theft should be reversed and dismissed. Instead, the majority has rewarded the State for neglecting to exercise due diligence in bringing Patterson to Arkansas.

I respectfully dissent.