Roy Eldridge DAVIS *v.* STATE of Arkansas

CR 94-521                                    892 S.W.2d 472

Supreme Court of Arkansas
Opinion delivered February 13, 1995

*A.J. Kelly*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. This court previously granted a motion for belated appeal filed by appellant, Roy Eldridge Davis. *Davis* v. *State*, 317 Ark. 322, 877 S.W.2d 93 (1994) (per curiam). Thus, appellant appeals a judgment of the Pulaski County Circuit Court entered in 1988 pursuant to a jury verdict convicting him of first degree murder and sentencing him as a habitual offender to life imprisonment in the Arkansas Department of Correction. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). For reversal, appellant asserts four points of error. We find no merit and affirm.

## SUFFICIENCY OF THE EVIDENCE

The third of the four arguments raised in appellant's brief is that the trial court erred in denying his motion for directed

verdict. This argument is a challenge to the sufficiency of the evidence. *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992). Preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Id.; Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

Appellant moved for a directed verdict at the close of the state's case and again at the close of all the evidence. Both motions, however, were general motions and did not state a specific basis for the motion. The first motion did not even state that it was based on insufficiency of the evidence.

> [PROSECUTOR]:     The state rests, your Honor.
>
> THE COURT:  All right.
>
> [DEFENSE]:     Your Honor, I move for a directed verdict.
>
> THE COURT:  That will be denied.
>
> [DEFENSE]:   I call Gary Lawrence.

The second motion was simply a renewal of the first motion, although counsel and the court did engage in a review of some of the evidence.

This court has stated repeatedly that a motion for directed verdict is treated as a challenge to the sufficiency of the evidence and therefore requires that the movant apprise the trial court of the specific basis on which the motion is made. *See, e.g., Campbell* v. *State*, 319 Ark. 332, 891 S.W.2d 55 (1995); *Walker* v. *State*, 318 Ark. 107, 883 S.W.2d 831 (1994); *Brown* v. *State*, 316 Ark. 724, 875 S.W.2d 828 (1994). This court has held "[i]f a motion for directed verdict is general and does not specify a basis for the motion, it will be insufficient to preserve a specific argument for appellate review." *Walker*, 318 Ark. at 109, 883 S.W.2d at 832. In so holding, this court reasoned that "'when specific grounds are stated and the absent proof is pinpointed, the trial court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof.'" *Id.* at 109, 883 S.W.2d at 832, (quoting *Brown*, 316 Ark. at 726, 875 S.W.2d at 830).

The motions made by appellant in the instant case

were wholly inadequate to apprise the trial court of the basis of the motion. Indeed, no basis was given at all. Appellant has therefore not preserved this argument on appeal.

## MISTRIAL

Appellant moved for a mistrial on the grounds that the jury was deadlocked. The trial court denied the motion and instructed the jury in accordance with AMCI 2d 8103, sometimes referred to as the "*Allen* instruction" or the "dynamite instruction." Appellant argues a deadlocked jury is an "overruling necessity" that compels the granting of a mistrial pursuant to *Shaw* v. *State*, 304 Ark. 381, 802 S.W.2d 468 (1991). While recognizing that a mistrial is an extreme and drastic remedy within the trial court's discretion, appellant contends a mistrial is appropriate in his case because justice could not be served by continuing the trial.

Appellant's argument is wholly without merit. The decision whether to declare a mistrial due to a jury's inability to reach a verdict is discretionary with the trial court, and is not reversed absent an abuse of that discretion. *Shaw*, 304 Ark. 381, 802 S.W.2d 468 (citing *McGirt* v. *State*, 289 Ark. 7, 708 S.W.2d 620 (1986)). Contrary to appellant's argument, *Shaw* does not mandate that a mistrial be declared in every case where the jury indicates it is deadlocked.

The jury in the instant case deliberated for two hours and sent a note to the judge that they were locked. Appellant moved for a mistrial at this point. The trial court inquired of the jury foreperson as to the numerical count of the vote, instructing the foreperson not to indicate whether the numbers were for guilty or not guilty. The vote was ten to two, and the foreperson indicated the minority view was firm. The trial court then asked the foreperson if there was anything he thought the court could do, or any instructions the court could give, to encourage the jury to reach an agreement. The foreperson responded he was unsure since he did not know what the instructions would be. The trial court then read AMCI 2d 8103 to the jury. The jury retired again to deliberate and returned a guilty verdict 15 minutes later.

On these facts, we cannot say the trial court abused its discretion in denying the mistrial. "Determining when the jury cannot agree is a matter over which the trial court has consider-

able discretion." *McGirt* v. *State*, 289 Ark. 7, 13, 708 S.W.2d 620, 623 (1986). Rather than granting a mistrial, the trial court gave the *Allen* instruction. It is well-settled that a trial court may give the *Allen* instruction. *Walker* v. *State*, 276 Ark. 434, 637 S.W.2d 528, *cert. denied*, 459 U.S. 975 (1982). In *Walker*, this court stated that it is not error to instruct the jury to perform its duty to return a verdict or to comment on the ills attendant upon a disagreement, so long as the trial court does not comment on the weight of the evidence, change the prior instructions, or instruct a juror to yield his convictions.

It was within the trial court's discretion to determine if the jury could not agree. *McGirt*, 289 Ark. 7, 708 S.W.2d 620. Here, the trial court made the determination to deny the mistrial and to give AMCI 2d 8103. There is nothing on this record to indicate justice required a mistrial be granted. Therefore, we find no abuse of discretion in denying the mistrial.

## EVIDENTIARY RULINGS

Because we did not review the sufficiency of the evidence, we recite the gist of the evidence here to allow an understanding of the evidentiary points raised herein. Appellant was convicted of the first degree murder of Joseph Brown. Brown died from gunshot wounds he suffered at the residence of his girl-friend, Audrey Palmer. Audrey Palmer testified appellant was her ex-boyfriend and telephoned her at her house on the night of the murder threatening to burn down her house. When the lights went out at Palmer's house later that evening, she reported a prowler at her home. The police responded to her call and witnessed appellant acting in a suspicious manner about two blocks from Palmer's house. Brown was in the backyard of Palmer's house near the breaker box when Palmer's son Kevin witnessed appellant also in the backyard. Kevin Palmer testified he heard shots and then saw appellant jump the backyard fence. Appellant makes three basic assignments of error under this point: (1) the exclusion of testimony by defense witnesses Joann Milton and Evelyn Lamar concerning impeachment of state's witnesses Audrey and Kevin Palmer; (2) the allowance of leading questions of Audrey Palmer concerning her description of a gun she saw in appellant's possession; and (3) the exclusion of a police officer's opinion testimony concerning gunshot residue test results.

As for the testimony of Joann Milton, appellant does not identify the testimony that was excluded by the trial court. Our law is well established that in order to challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so this court can review the trial court's decision, unless the substance of the evidence is apparent from the context. ARE Rule 103(a)(2); *Patterson* v. *State*, 318 Ark. 358, 885 S.W.2d 667 (1994). In the instant case, appellant made no proffer of what Ms. Milton's testimony would be and we cannot tell what the specifics of her testimony would be from the context of the questions. Accordingly, this argument is not preserved for our review. We observe, however, that even assuming *arguendo* that any error occurred, we cannot say appellant suffered any prejudice. Ms. Milton disobeyed the trial court's sustaining of one objection and stated that "Kevin didn't like Roy." Obviously then, the jury heard testimony of Kevin Palmer's possible bias against appellant.

As for the excluded testimony of Evelyn Lamar, the trial court sustained the state's objection to the form of a question that called for hearsay, although appellant's counsel stated he was offering the testimony for credibility purposes. Appellant's counsel never rephrased the question into an acceptable form and cannot complain of his failure to do so now. Moreover, appellant could not have impeached Audrey Palmer with the testimony of Lamar as to any alleged prior inconsistent statement by Palmer because Palmer never testified to making any statements to Lamar. ARE Rule 613. Appellant argues he should have been allowed to recall Palmer for the purpose of opening the door to Lamar's impeaching testimony. The record does not contain a proffer from which we can determine the statements appellant alleges Palmer may have made and whether she would have denied making them; nor can we determine what Lamar would have said that would have impeached Palmer. Accordingly, this argument is not preserved for our review. *Patterson*, 318 Ark. 358, 885 S.W.2d 667.

With regard to Palmer's testimony concerning the gun she alleged appellant to have possessed, the trial court permitted a very few leading questions on re-direct examination in order for her to determine that the gun was a revolver. Palmer was asked what kind of gun it was, and she stated she did not know

because she did not know anything about guns. The trial court then allowed the prosecutor to "lead a little bit" by asking if the gun had a round cylinder where the bullets went. Rulings on evidence are within the broad discretion of the trial court and are not reversed absent a manifest abuse of that discretion. *White* v. *State*, 303 Ark. 30, 792 S.W.2d 867 (1990). Rule 611(c) of the Arkansas Rules of Evidence permits leading questions on direct examination only "as may be necessary to develop [witness's] testimony." Given Palmer's admission she did not know anything about guns, we cannot say the trial court abused its discretion in allowing the very few leading questions to develop her testimony by determining what kind of gun she testified she saw.

With respect to the police officer's opinion as to the results of the gunshot residue test, the trial court ruled appellant could not question the police officer because he did not perform the test. The test was performed by Gary Lawrence of the Arkansas State Crime Laboratory; the police officer gathered the evidence so that Lawrence could perform the actual test. Lawrence was available to testify at trial, and indeed did testify as a witness called by appellant. Lawrence was thus available to appellant for testimony on the test results. We cannot say the trial court abused its discretion in refusing to allow the police officer's testimony as to the results of a test the officer did not conduct.

## HABITUAL OFFENDER STATUS

Approximately two months prior to trial and after appellant refused a negotiated plea, the trial court allowed the state to amend the information to charge appellant as a habitual offender. Appellant objected to the amendment of the information, arguing "I object to it at this — because of the late date on it." The trial court ruled it would allow the amendment, even up until the time of trial, because it affected only punishment, and had no effect on the quality or quantity of proof as to guilt or innocence.

On appeal, appellant argues the trial court erred in allowing the amendment after the conclusion of plea negotiations. Suffice it to say, as this court stated in *Wright* v. *State*, 267 Ark. 264, 272, 590 S.W.2d 15, 21 (1979), "the amendment was timely filed, and it was not error for the prosecutor to file the

habitual offender charge when the appellant withdrew from plea negotiations." (Citations omitted).

## COMPLIANCE WITH RULE 4-3(h)

In accordance with Ark. Sup. Ct. R. 4-3(h), the transcript has been examined for prejudicial errors objected to by appellant but not argued on appeal and we conclude no such errors occurred.

The judgment is affirmed.