William HINZMAN *v.* STATE of Arkansas

CA CR 95-128                                   922 S.W.2d 725

Court of Appeals of Arkansas
Division I
Opinion delivered May 15, 1996

*Meredith Wineland*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. The appellant, William Hinzman, was found guilty of raping his eleven-year-old stepdaughter, M.P., in violation of Ark. Code Ann. § 5-14-103(3) (Repl. 1993). As a result of the jury's verdict, he was sentenced to twenty years in the Arkansas Department of Correction. Appellant raises three issues in this appeal. He contends that: (1) the trial court erred by permitting improper impeachment of M.P. with a prior inconsistent statement; (2) the trial court erred in allowing the testimony of two persons who were not previously identified as witnesses; and (3) the trial

court erred in denying his motion for a directed verdict because the State failed to offer adequate proof to corroborate his confessions. Because we find merit in the first issue raised, we reverse and remand for a new trial.

■■■ As his third point, appellant contends that the trial court erred in denying his motion for a directed verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Young v. State*, 321 Ark. 541, 906 S.W.2d 280 (1995). Preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of other trial errors. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996); *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the jury's verdict. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Mosley v. State*, 323 Ark. 244, 914 S.W.2d 731 (1996).

In August of 1993, M.P. reported to her mother, appellant's wife, that she was being molested by appellant. M.P. moved with her mother out of the home they shared with appellant, and the local authorities were notified of M.P.'s accusations. On September 15, 1993, appellant was interviewed by Lieutenant David Smith of the Saline County Sheriff's Department. Appellant gave a recorded statement in which he confessed to committing acts of deviate sexual activity with the child. In summary, he described incidents of touching, fondling and the mutual performance of oral sex. Appellant also admitted that he had shown the child a sexually explicit video as a demonstration of "what I wanted her to do." A transcript of the statement was introduced into evidence by the State at appellant's trial.

Appellant attended two counselling sessions with Dr. William G. Grambling, the first in the company of his wife, and the second in the presence of both his wife and M.P.'s natural father, Jim Price. At trial, Dr. Grambling testified that at the first session he explained to appellant and his wife that, although his primary responsibility was toward the child, he would also work with them, but that he expected the truth to be told. He said that he sent appellant's wife out of the room and that appellant looked at him and said, "I did it." He said that appellant's confession was discussed with his wife

when she returned to the room. Dr. Grambling also testified that appellant admitted what he had done in the session attended by Jim Price. Mr. Price confirmed this in his testimony. He said that appellant admitted that he had engaged in oral intercourse with M.P. on four occasions and that appellant related that he had educated the child by showing her an "X-rated" video program.

Appellant contends that there was no evidence introduced by the State to corroborate the various confessions made by him. We cannot agree.

██ Unless made in open court, a defendant's confession standing alone will not support a conviction except where "accompanied by other proof that the offense was committed." Ark. Code Ann. § 16-89-111(d) (1987). This requirement for other proof, called the corpus delicti, mandates only that a showing be made that the offense occurred, and nothing more. *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). Hearsay statements, when admitted, are sufficient to corroborate a confession. *See Johnson v. State*, 298 Ark. 617, 770 s.w.2d 128 (1989). Here, appellant's wife testified, without objection, that M.P. told her that appellant had "chewed her out," meaning that appellant had oral intercourse with her. Mrs. Hinzman further testified that M.P. reported that appellant had touched her chest and had placed his hands inside her pants. On the basis of this testimony, we cannot conclude that corroboration was lacking and hold that there was substantial evidence to support the conviction.

Prior to trial, M.P. recanted her allegations of abuse. The primary thrust of this appeal concerns the dual contentions that the trial court erred by permitting the State to call M.P. solely for the purpose of impeaching her testimony and by allowing the State to outline the substance of those statements during the impeachment process. Appellant contends that the probative value of the State's use of the statements was far outweighed by the danger of unfair prejudice.

The issue arose in this manner. Appellant filed a motion *in limine* informing the court that M.P. had disavowed her accusations of sexual misconduct perpetrated by appellant. For this reason, he asked the court to prohibit the State from calling her as a witness for the purpose of impeaching her testimony with the prior statements. The court addressed the motion in chambers before the beginning

of trial. After M.P. was provided the opportunity to consult with an attorney, she told the court that she would testify that the statements she had made in the past were false. The trial court ruled that it would permit the State to call her as a witness for the purposes of establishing opportunity, timing and identity. The court further ruled that, if M.P. denied making the earlier statements, then it would allow the State to impeach her with her inconsistent statements. The court also offered to instruct the jury that it was to consider the statements only for the purpose of judging the child's credibility, but not as substantive evidence.

When M.P. testified before the jury, she said that appellant had never touched her in an inappropriate manner, and she denied that he had ever engaged in oral sex with her. M.P. admitted that she had previously reported that appellant had done those things, but she said that her statements were not true. She explained that she had falsely accused the appellant in anger over being punished for having told a lie. The trial court refused the State's request to introduce into evidence the separate statements M.P. had made to Officer Smith and a caseworker from the Saline County Department of Human Services. Over appellant's multiple objections, the court permitted the State to question M.P. in detail and with specificity regarding the statements she had made.

■ In deciding this issue, we observe a few general principles. Rule 613 of the Arkansas Rules of Evidence permits extrinsic evidence of prior inconsistent statements of a witness for the purpose of impeachment if the witness is afforded the opportunity to explain or deny the statement, and does not admit having made it, and the other party is afforded the opportunity to interrogate the witness on that statement. *Harris* v. *State*, 36 Ark. App. 120, 819 S.W.2d 30 (1991); *see also Chisum* v. *State*, 273 Ark. 1, 616 S.W.2d 728 (1981). If the witness, however, admits making the prior inconsistent statement, then extrinsic evidence of that statement is not admissible. It has been said that an admitted liar need not be proved one. *Gross* v. *State*, 8 Ark. App. 241, 650 S.W.2d 603 (1983). *See also Ford* v. *State*, 296 Ark. 8, 753 S.W.2d 258 (1988). Also, unsworn prior statements made by a witness cannot be introduced as substantive evidence in a criminal case to prove the truth of the matter asserted therein. Ark. R. Evid. 801(d)(1)(i); *Lewis* v. *State*, 41 Ark. App. 89, 848 S.W.2d 955 (1993). *See also Smith* v. *State*, 279 Ark. 68, 648 S.W.2d 490 (1983). Therefore, the trial court was correct in

its ruling that the statements previously made by M.P. could not be introduced into evidence for impeachment purposes since she admitted making them. The trial court was also correct in recognizing that the statements could not be introduced as substantive evidence since neither of them were made under oath, and were thus hearsay.

As authority for his argument, appellant places much emphasis on our decision in *Gross v. State, supra*. In that case, the prosecution knew, as it did here, that its witness, who had once implicated both himself and the appellant in the commission of a crime, would not testify in accordance with his earlier statement. The statement itself was not admitted into evidence, nor did the police officers who recorded the statement testify regarding it. However, the prosecution had been allowed to question the witness about the particulars of his prior inconsistent statement. In reversing, we held that the resolution of the issue was controlled by Rule 403 of the Arkansas Rules of Evidence, and we were persuaded that any advantage the prosecution may have gained by discrediting the witness was exceeded by the risk of prejudice resulting from disclosing to the jury the content of the statement.

In *Gross v. State*, we relied heavily on the decision in *Roberts v. State*, 278 Ark. 550, 648 S.W.2d 44 (1983). There, the witness first professed to have witnessed the murder of his mother by his father. In two subsequent accounts, the witness retracted that statement and gave a differing version of the events he had observed, which were less incriminating of his father. Although the witness fully admitted making the prior inconsistent statement, the trial court allowed the prosecution to introduce the complete text of the statement through another witness. On appeal, the court found error in that ruling. The court also addressed the question of whether the State could impeach its own witness by use of the prior inconsistent statement. The court held that such impeachment was permitted if the probative value on the issue of impeachment outweighs the prejudicial effect arising from the danger that the jury will give substantive effect to the prior inconsistent statement. The court concluded that, under the circumstances of that case, it was error to have allowed the State to ask the witness about the prior inconsistent statement. The court further observed:

> The State argues that asking Richard about his prior inconsistent statements was for impeachment purposes, but it

> was really a mere subterfuge. The only conceivable reason that the State could have for impeaching its own witness was to bring before the jury hearsay information not admissible as substantive evidence, hoping that the jury would accord it substantive value although it was clearly inadmissible as such under Rule 801(d)(1)(i). In this instance the danger of convicting the defendant on unsworn testimony is too great; the limiting instruction to the jury directing them to consider the prior inconsistent statement for impeachment only was not a sufficient safeguard.

*Id.* at 552, 648 S.W.2d at 46.

In a subsequent decision, *Pemberton v. State*, 292 Ark. 405, 730 S.W.2d 889 (1987), a witness for the State gave testimony which was contrary to an earlier statement she had made. The trial court initially ruled that the State could not ask her about the prior statement, but later allowed such questioning in light of questions asked by the defense on cross-examination. On appeal, the appellant argued that the decision in *Roberts v. State, supra,* disallowed any reference whatsoever to the prior inconsistent statement. The supreme court disagreed, holding that under the attendant circumstances, the questioning of the witness was not unduly prejudicial. In discussing *Roberts,* the court said:

> Whatever the unfair prejudice may have been in that case, we do not find it here. The ruling in the *Roberts* case that the prior statement itself could not be *quoted* into evidence as part of the impeachment process was consistent with prior Arkansas cases, and indicated that the adoption of A.R.E. 613 had not presaged any change in that respect. However, if we meant to say there that the fact that a *reference to, rather than a quotation of,* a prior inconsistent statement was unfairly prejudicial because it came in the form of the state's impeachment of its own witness, we failed to take account of A.R.E. 607. That rule makes it clear that there no longer is a general prohibition against such impeachment.

*Pemberton v. State,* at 408-409, 730 S.W.2d at 891. (emphasis supplied) (citations omitted).

■ With these decisions in mind, we conclude that the State's use of the statements exceeded the parameters of proper impeachment. In questioning M.P., the prosecutor quoted from the

statements, line by line, in effect reciting the statements into the record. We must agree with appellant that this tactic allowed the State to accomplish through the back door that which it could not have achieved directly. As stated above, the statements were not admissible for purposes of impeachment since M.P. had admitted making them, and the statements were not admissible as substantive evidence because they were not made under oath. By proceeding in this manner, the danger was too great that the jury would accord the statements substantive value.

■ Whether or not the State should have been allowed to impeach M.P. by reference to the previous statement is another issue. As pointed out by the supreme court in *Pemberton v. State, supra,* the impeachment of a party's own witness is generally permitted under Rule 607 of the Arkansas Rules of Evidence. *See also Chisum v. State,* 273 Ark. 1, 616 S.W.2d 728 (1981). In accordance with that decision, and the opinions in *Roberts v. State, supra,* and *Gross v. State, supra,* the answer to this question is governed by Rule 403 of the Rules of Evidence. Since we are reversing this case because the State exceeded the bounds of permissible impeachment, we address this question only to the extent that it may arise on retrial. Since the complexion of the case will likely be different on remand, we are not willing to decide at this time whether impeachment of the witness will be permitted, and instead we leave it for the trial court to determine, in its discretion, whether the risk of unfair prejudice will outweigh the probative value of impeachment.

As his last issue, appellant argues that the trial court erred by not excluding the testimony of Dr. Grambling and Jim Price, who were called by the State in light of M.P.'s disaffirmance of her previous statements. Appellant objected and requested a continuance, alleging a discovery violation because neither of them had been listed by the State as potential witnesses. The court allowed the State to present their testimony and initially denied appellant's request for a continuance, but the court later altered its ruling by granting a three-week continuance after the witnesses had been examined. In granting the continuance, the trial court stated that it was doing so "out of an abundance of caution," but that it did not feel that appellant had been surprised or prejudiced by the witnesses's testimony. The court also stated that he would permit appellant further cross-examination of the witnesses and later, when

trial resumed, the court stated that it would strike any part of the witnesses's testimony which appellant showed to be objectionable.

Rule 17.1 of the Rules of Criminal Procedure requires the prosecution to give the names and addresses of witnesses it intends to call at trial, and Rule 19.2 imposes a continuing duty to disclose this information. The required notification must be accomplished in sufficient time to permit beneficial use by the defense. *Robinson v. State*, 317 Ark. 407, 878 S.W.2d 405 (1994). The trial court has four options under Rule 19.7 to remedy a violation of the rules: permit discovery, exclude the undisclosed evidence, grant a continuance, or enter an order as the court deems appropriate under the circumstances. *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995). The key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose; absent a showing of prejudice, we will not reverse. *Burton v. State*, 314 Ark. 317, 862 S.W.2d 252 (1993).

Appellant's claim of prejudice is based on the argument that the witnesses' testimony was privileged under Rule 503 of the Rules of Civil Procedure, which sets out the psychotherapist-patient privilege. Appellant's claim of prejudice is misplaced in that the record reflects that the communications made by appellant in the counselling sessions were not "confidential."

Rule 503(b) provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his ... confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

A communication is "confidential" if it is not intended to be disclosed to third persons, except persons present to further the interest of the patient, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family. Ark. R. Evid. 503(a)(4).

Dr. Grambling testified that he explained to appellant that he would report his findings to the prosecuting attorney's office and the Department of Human Services, and said that he did indeed make reports to both of those entities. Thus, it cannot be said that appellant can successfully claim that his communications during those sessions were privileged. In addition, the court allowed a lengthy continuance, permitted the opportunity for further cross-examination and stated its willingness to strike any part of the witnesses's testimony that proved inadmissible. Although we agree with appellant that the better course would have been for the court to have allowed a continuance before the witnesses testified, we cannot say that the court's action amounted to an abuse of discretion under these circumstances. *See Caldwell* v. *State*, 319 Ark. 243, 891 S.W.2d 42 (1995).

Reversed and remanded.

PITTMAN and COOPER, JJ., agree.