Dewayne WILLIAMS *v.* STATE of Arkansas

CA CR 93-1291                                     934 S.W.2d 931

Court of Appeals of Arkansas
En Banc
Opinion delivered November 20, 1996

*Steve Imboden*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. Appellant, Dewayne Williams, was found guilty by a jury of second-degree murder and was sentenced to a term of twenty years in prison. Appellant raises three issues for reversal of his conviction. Because we find merit with his first point, we reverse and remand for a new trial.

Shane Kidwell was fatally shot while sitting in his car at a housing project in Blytheville, Arkansas, and appellant was charged with first-degree murder in connection with Kidwell's death. Appellant filed a pretrial motion to prohibit the State from impeaching its own, as well as defense, witnesses with prior statements made to the police. Appellant again raised objections to the State's impeach-

ment of the witnesses at trial, which the trial court overruled. Appellant assigns the trial court's rulings as error.

We recently considered this issue in *Hinzman v. State*, 53 Ark. App. 256, 922 S.W.2d 725 (1996). There, we recognized that unsworn statements made by a witness are hearsay, and thus cannot be introduced as substantive evidence to prove the truth of the matter asserted therein. We also acknowledged that, under Rule 613 of the Arkansas Rules of Evidence, extrinsic evidence of a prior inconsistent statement made by a witness can be admitted if the witness is afforded the opportunity to explain or deny the statement, and does not admit having made it, and the other party is afforded the opportunity to interrogate the witness about the statement. Conversely, if the witness admits giving a prior inconsistent statement, then extrinsic evidence of that statement is not permitted. *Id.* In *Hinzman v. State*, we determined that the trial court had erred by allowing the State to impeach the prosecuting witness, who candidly admitted that she had previously given false statements to the police and others, by quoting excerpts from the prior statement detailing the accusations she had made against the defendant. We reached that decision in reliance on the settled principles mentioned above and previous case law, particularly the supreme court decision of *Roberts v. State*, 278 Ark. 550, 648 S.W.2d 44 (1983), where it was held that a prior inconsistent statement could not be quoted into evidence as part of the impeachment process.

In the case at bar, Shawn Jefferson, a witness for the defense, testified on direct examination that appellant was standing in a crowd drinking when the shooting occurred and that the only person near the victim's vehicle was Jerome Woodard, who had since been killed. During cross-examination, the State asked Mr. Jefferson if he had given a statement to police officers soon after the murder of Shane Kidwell. The witness responded that he had voluntarily given a statement to the police. The following then occurred:

Q: You told them in that statement that "[appellant] went to shooting at the dude," didn't you?

A: I can't remember.

Q: Would you like to have a copy of your statement to look at?

A: Yes, sir, I would.

Q: (HANDING) I refer you to page two. The last few questions on page two. Did you make that statement to police officers?

A: (EXAMINING) I believe so.

Q: That was in a tape recorded statement?

A: Yes, sir, it sure was.

Q: That was some one or two days after this murder had taken place — the murder of Shane Kidwell. Did you in fact at that time make a statement that [appellant] had shot Shane Kidwell some four to five times?

A: Yes, sir, I did.

In its examination of the witness, the State did more than question the witness as to whether he had given a statement which was not consistent with his testimony at trial. As in *Hinzman* v. *State*, the State sought to impeach the witness with the prior statement by quoting from the statement, thereby revealing the content of the assertions which had been previously made. Moreover, the witness was not given the opportunity to explain or deny that he had given an inconsistent statement. *See Patterson* v. *State*, 318 Ark. 358, 885 S.W.2d 667 (1994). In keeping with *Hinzman* v. *State* and the case law discussed therein, we conclude that the State's attempt to impeach the witness was improper. The dissent asserts that Shawn Jefferson did not unequivocally admit the statement. It is clear from the record that Mr. Jefferson admitted making a statement but was not given the opportunity to admit or deny making a prior inconsistent statement as Rule 613 requires.

For much the same reason, we also conclude that error occurred in the State's impeachment of its own witness, Kimberly Smith.

Appellant also argues that the trial court erred in denying his motion to suppress evidence because his custodial statement was not given voluntarily but was obtained in violation of his *Miranda* rights. We disagree.

In reviewing the trial court's denial of a motion to suppress, we make an independent determination based on the totality

of the circumstances and reverse the trial court only if the decision was clearly against the preponderance of the evidence. *Dickerson* v. *State*, 51 Ark. App. 64, 909 S.W.2d 653 (1995).

Custodial statements are presumed involuntary, and the State has the burden of proving otherwise. *McClendon* v. *State*, 316 Ark. 688, 875 S.W.2d 55 (1994). The State must therefore make a *prima facie* showing that the accused knowingly, intelligently, and voluntarily waived his right to remain silent. *Morris* v. *State*, 302 Ark. 532, 792 S.W.2d 288 (1990). In determining whether a statement is voluntary, consideration is given to the accused's age, lack of education, low intelligence, lack of advice of constitutional rights, length of detention, repeated and prolonged questioning, and the use of physical punishment. *Henderson* v. *State*, 311 Ark. 398, 844 S.W.2d 360 (1993). The credibility of the witnesses who testify to the circumstances surrounding the defendant's custodial statement is for the trial court to determine. *Porchia* v. *State*, 306 Ark. 443, 815 S.W.2d 926 (1991).

The record reveals that appellant was twenty-one years old, had an eleventh grade education, and was working on a GED. Ralph Hill, Chief of Police in Blytheville, arrested appellant on Friday, July 18, 1992, at 6:30 a.m. Chief Hill testified that he advised appellant of his *Miranda* rights. Chief Hill said that appellant acknowledged that he understood his rights, but he did not take a statement from appellant at that time because appellant was intoxicated. Mary Ann Lampe, a detective sergeant, testified that she was present at the time appellant was arrested and that he was advised of his rights. She also said that appellant was not questioned at that time because he was intoxicated.

Vernon Gann, a detective with the Blytheville police department, testified that he interviewed appellant at 9:00 a.m. on Monday, July 20, two days after his arrest. He said that he advised appellant of his rights and read the rights form to appellant. Detective Gann testified that appellant refused to sign the rights form, but that appellant indicated that he understood his rights and would cooperate and answer any questions. He said that he tape recorded their conversation, and appellant gave his statement of his own free will and was not threatened, hit, struck, or beaten. Detective Mike Marshall was also present during the interview, and he testified that appellant voluntarily waived his rights and agreed to give a statement.

Appellant testified that he was intoxicated when he was arrested. He said that Chief Hill got violent with him and began kicking his chair. Appellant testified that he requested an attorney several times over the course of the weekend and that he was struck and threatened. Appellant admitted that he refused to sign the rights form.

After reviewing the evidence, we cannot say that the trial court's finding that appellant voluntarily waived his *Miranda* rights was clearly against the preponderance of the evidence.

Appellant also maintains, however, that there was no valid waiver of his *Miranda* rights because he did not sign the written waiver. There is no requirement that an accused sign a written waiver prior to making a statement. *Hayes* v. *State*, 312 Ark. 349, 849 S.W.2d 501 (1993).

Lastly, appellant argues that he was not promptly brought before a magistrate following his arrest pursuant to Ark. R. Crim. P. 8.1. We decline to address appellant's final point because he failed to make this argument below, and we do not address issues raised for the first time on appeal. *Penn* v. *State*, 319 Ark. 739, 894 S.W.2d 597 (1995).

Reversed and remanded.

ROBBINS, MAYFIELD and NEAL, JJ., agree.

JENNINGS, C.J., and PITTMAN, J., concur in part and dissent in part.

JOHN MAUZY PITTMAN, Judge. I respectfully dissent from that portion of the majority opinion regarding the issue of the impeachment of two witnesses. I do not disagree with the abstract principles of law recited in the prevailing opinion. However, I cannot agree with the affirming judges' application of those principles to the facts of this case.

The State's witness, Kimberly Smith, testified on direct examination that she did not see anyone with a gun on the night of the shooting. The prosecutor asked if she saw anything in appellant's hand that night. She responded, "I can't say it was a gun but — I don't know what it was in his hand." When the prosecutor asked her if she had given a statement to the police, appellant's counsel sought to be heard on his motion *in limine* that the State not be

permitted to impeach its own witness with a prior statement because the effect would be to present inadmissible hearsay as substantive evidence. A hearing outside the jury's presence was conducted at that time, and the witness testified that she did not have firsthand knowledge as to the substance of the statements she made and that much of her prior statement was based on hearsay. She further testified at the hearing that she saw the print of a gun in appellant's back pocket, but that she could not say with certainty that it was a gun. Her prior statement was that she saw appellant "playing with his gun" and "saw him with it that night." The court ruled that the State could ask the witness if her trial testimony was inconsistent with the prior statement and if she said "yes," no further testimony would be permitted.

When the trial resumed, Smith stated that she did not see anything in appellant's hand that night, but did see what looked like the print of a gun in his pocket. When the prosecutor asked if her testimony was consistent with her prior statement given to the police, appellant objected, the court modified its earlier ruling, and the question was never answered. The court ruled that the probative value of the impeachment outweighed any possible prejudicial effect. The prosecutor was then allowed to ask the witness whether she said in her prior statement that appellant had a gun. The witness responded, "By hearsay, yes, I did."

Appellant first contends that the State impermissibly exposed to the jury hearsay testimony and that the probative value of the testimony was outweighed by the prejudicial effect of the jury attributing substantive value to the prior inconsistent statement. Appellant cites *Roberts v. State*, 278 Ark. 550, 648 S.W.2d 44 (1983), in which the supreme court held that the State knew that the witness's trial testimony would be inconsistent with a prior statement and that the only reason the State could have for impeaching its own witness would be to allow the jury to accord substantive value to the otherwise inadmissible testimony. Here, however, the prosecutor stated that the State had not spoken with the witness prior to trial because she was charged with murder in an unrelated case. Thus, unlike in *Roberts*, I cannot say that the State's impeachment of its own witness was done in bad faith. *See Gross v. State*, 8 Ark. App. 241, 650 S.W.2d 603 (1983).

Appellant argues next that the State could ask the witness, without referencing the specific prior statement, only whether her

trial testimony was inconsistent with a prior statement. In *Pemberton v. State*, 292 Ark. 405, 730 S.W.2d 889 (1987), the court rejected the argument that questioning by referencing the prior inconsistent statement was impermissible. There, the witness was questioned by reference to a specific prior inconsistent statement, and the court held that the questioning was not unduly prejudicial. In *Gross v. State, supra*, this court stated that whether a witness could be questioned with reference to the specific statement is controlled by Ark. R. Evid. 607, 613, and 403. While the law is clear that it is impermissible to quote from the prior statement so as to essentially read it into evidence, the permissibility of a reference to the specific statement is governed by Rule 403. *Roberts v. State, supra; see Hinzman v. State*, 53 Ark. App. 256, 922 S.W.2d 725 (1996). In the present case, the trial court held that the probative value of the impeachment of the witness's testimony outweighed its prejudicial effect. Prior inconsistent statements are relevant for impeachment purposes where they contradict testimony. *McDaniel v. State*, 291 Ark. 596, 726 S.W.2d 679 (1987). If the cross-examiner is restricted to referring to the prior statement only in the most general terms, the witness is not given a fair opportunity to explain the prior statement, any impeachment that may occur is negligible, and the jury is likely confused. I find no error in the impeachment of witness Kimberly Smith.

Shawn Jefferson, the second witness in question, testified at trial that the only person near the victim's car at the time of the shooting was Jerome Woodard. Jefferson's testimony cited in the prevailing opinion demonstrates that Jefferson failed to unequivocally admit the statement. One of the purposes for referring to the content of the prior statement is to call the witness's attention to the exact statement so that the witness is given a complete opportunity to explain or deny it, in accordance with Rule 613(b). When the witness does not unequivocally admit the making of the statement, but says "I can't remember" and "I believe so," then the minimal foundation required by this rule has been laid. Here, the prosecutor paraphrased Jefferson's prior statement that appellant shot the victim some four to five times and also quoted a brief excerpt from this statement that "[appellant] went to shooting at the dude." In the end, Jefferson admitted making a prior statement that he had seen appellant shoot the victim four or five times; however, the prosecution did not pursue the questioning and produced no extrinsic evidence. The State should not be limited in its impeachment

evidence when the witness does not unequivocally admit making the prior inconsistent statement. *See Hinzman* v. *State, supra.* I find no error.

JENNINGS, C.J., joins in this opinion.