Cathy LEWIS *v.* Rebecca GUBANSKI, Rodney Wyatt,
and Werner Enterprises, Inc.

CA 94-164          905 S.W.2d 847

Court of Appeals of Arkansas
En Banc
Opinion delivered September 13, 1995
[Rehearing denied October 18, 1995.*]

---

*Jennings, C.J., and Robbins, J., would grant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce Munson* and *Valerie Denton*, for appellant.

*Gary Eubanks & Associates*, by: *James Gerard Schulze* and *William Gary Holt*, for appellee Rebecca L. Gubanski.

*Laser, Sharp, Wilson, Bufford & Watts, P.A.*, by: *Richard N. Watts* and *Brian A. Brown*, for appellees Rodney Wyatt and Werner Enterprises, Inc.

MELVIN MAYFIELD, Judge. This is an appeal from a judgment entered on a jury verdict against the appellant Cathy Lewis and in favor of the appellees. The lawsuit was filed as a result of an accident involving three vehicles. Although the cause of action is a tort, the appeal is in this court because it does not present "a question" about the law of torts as required by Arkansas Supreme Court and Court of Appeals Rule 1-2(a)(16). The only issues presented involve questions about the admissibility of evidence.

Appellant's first point on appeal states that "the trial court made a reversible error in admitting the out-of-court statement of Earl Medley into evidence as an adoptive admission."

The accident occurred in September 1991, and the case was tried in August of 1993. At the time of the accident the appellant was driving one of the vehicles, and her husband, Earl Medley, was a passenger in that vehicle. The appellee Rebecca Gubanski was driving another vehicle, and the suit was filed by her against the appellant and the driver and the owner of the third vehicle. The jury found for Gubanski against the appellant but not against the driver or owner of the third vehicle. At the time of the trial the appellant and her husband were divorced, and he was living in another state and was not present at the trial. The appellees, however, offered the testimony of John Goodsell, a truck driver who was present at the scene of the accident. They sought to elicit from Goodsell testimony that shortly after the accident he talked with Earl Medley in the appellant's presence, and that Medley said the accident was the appellant's fault. This testimony was offered as an adoptive admission under Arkansas Rule of Evidence 801(d)(2)(ii).

The court heard Goodsell's testimony in chambers to determine if a sufficient foundation had been laid. Goodsell testified:

> After the accident we parked [at a] wide place and came back down to where it was all at. I walked around and talked to people after the accident. I talked to Ms. Lewis' husband. When I had the conversation with him Ms. Lewis was standing there. We were all standing there just at the Jeep, all together there. The tone or loudness of the conversation in my opinion Ms. Lewis would've heard what was said. He said she was nervous and [he] told her to go ahead and that she had all kind of room to make it and that it was her fault when it was all over with. Ms. Lewis didn't say nothing.
>
> I don't know whether or not this lady heard the conversation. If she didn't, she needs a hearing aid.

The trial court ruled that a sufficient foundation had been laid and allowed this testimony. We do not think the court erred in this ruling. Rule 801(d)(2)(ii) provides that a statement

offered against the party "of which he has manifested his adoption or belief in its truth" is not hearsay. Such a statement is called "an adoptive admission." *See Morris* v. *State*, 302 Ark. 532, 792 S.W.2d 288 (1990). In *Wilson* v. *City of Pine Bluff*, 6 Ark. App. 286, 641 S.W.2d 33 (1982), it was pointed out that prior to the adoption of our Rules of Evidence we recognized what the Rules now refer to as an adoptive admission as a "tacit admission" and allowed it in evidence as an exception to the hearsay rule. The admissibility of such evidence is tested by whether a reasonable person, under the circumstances, would have been expected to deny the statements if they were in fact untrue. *Morris* said a trial court must find that sufficient foundational facts have been introduced so the jury can reasonably infer that the accused heard and understood the statement and the statement was such that, under the circumstances, if the accused did not concur in the statement he would normally respond. Once such a foundation has been established, the question is left to the jury to determine whether the accused acquiesced in the statement. 302 Ark. at 537, 792 S.W.2d at 291.

■ Preliminary questions concerning the admissibility of evidence, such as whether a proper foundation has been laid, are determined by the trial court. *See* Ark. R. Evid. 104(a). The trial court's determination in this regard is reversed only if there is an abuse of discretion. *Marx* v. *State*, 291 Ark. 325, 724 S.W.2d 456 (1987). Under the circumstances in the instant case we think the trial court could have properly found that an adequate foundation for admissibility had been laid. The evidence was such that the jury could reasonably infer that the appellant heard Medley's statement, and the jury could find that she acquiesced in it.

■ The appellant also argues that the statement of Medley should have been excluded under Ark. R. Evid. 403 which provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or other considerations mentioned in the rule. The only consideration argued by appellant here is unfair prejudice. In *Weger* v. *State*, 315 Ark. 555, 559, 869 S.W.2d 688, 690 (1994), our supreme court said, "We have repeatedly held that the balancing of probative value against prejudice is a matter left to the sound discretion of the trial judge, and a trial judge's ruling on this issue will not be disturbed absent a showing of manifest

abuse." We cannot say the trial judge abused his discretion in allowing this evidence in this case, especially in light of our holding on the next point argued by the appellant.

Appellant's next point is that "the trial court committed reversible error in refusing to admit, as rebuttal evidence, the statement given by Earl Medley to the insurance investigator. . . ."

■ The appellees' first response to this point is that there was not an adequate proffer of this statement. We do not agree. Arkansas Rules of Evidence 103(a)(2) provides that no offer of proof is required if the substance of the evidence sought to be introduced is "apparent from the context within which questions were asked." *See also Billett* v. *State*, 317 Ark. 346, 348, 877 S.W.2d 913, 914 (1994) ("[P]roffer is not necessary when the substance of the offer is apparent.").

Here, the appellant's abstract shows that after an attorney for Mr. Wyatt (the driver of the third vehicle), who is one of the appellees, had elicited from the witness John Goodsell his testimony of what the appellant's husband said in the appellant's presence about the automobile accident being her fault, the appellant testified in rebuttal that her husband "did not say anything remotely resembling" what Goodsell testified her husband said. Appellant then stated, "He provided a statement to the investigators for Mr. Wyatt within a few days after the accident." At this point Mr. Wyatt's attorney objected and appellant's attorney told the trial judge that the statement referred to was taken by Mr. Wyatt's insurance company and "is inconsistent to what Mr. Goodsell has said here." Appellant's attorney then explained that he was being put in a position where the jury was going to be able to rely on Goodsell's testimony about what appellant's husband said, and "yet, I am not allowed to even bring up the fact that he [meaning the appellant's husband] obviously had a prior inconsistent to that."

The court then ruled on the objection by Mr. Wyatt's attorney by stating that the appellant could deny that the statement (which Goodsell said appellant's husband had said) was ever made in the appellant's presence, "but to allow her to start testifying to what a non-party said in a statement is improper."

As we have pointed out, previous to this ruling the trial

judge had heard testimony in chambers and had ruled that Mr. Goodsell's testimony about what appellant's husband had said in the appellant's presence would be admissible under Arkansas Evidence Rule 801(d)(2) as "a statement in which one party has manifested a belief in its truth." Therefore, taking into consideration all the above circumstances, we cannot agree that the substance of the evidence that appellant's attorney wanted to introduce was not known to the trial judge. He clearly knew that the appellant was going to testify about the statement that her husband had given to the insurance investigator, and her attorney told the judge that it was inconsistent with what Goodsell had testified the husband had said shortly after the accident.

We now turn to a discussion of the trial court's ruling that to allow appellant "to start testifying about what a non-party said in a statement is improper." We first call attention to the fact that the Publisher's Notes, following Ark. R. Evid. 101, state that the Arkansas Rules of Evidence started with the adoption of the Uniform Rules of Evidence at an invalid session of the legislature and were then adopted under the statutory and rule-making authority of the Arkansas Supreme Court. *See Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986). Previous to *Ricarte*, the court said in *Rhodes* v. *State*, 276 Ark. 203, 210, 634 S.W.2d 107, 111 (1982), that "we desire to maintain an interpretation of the Uniform Rules that is reasonably consistent with other states as well as with the Federal Rules of Evidence."

Therefore, we start with a comparison of Arkansas Rule of Evidence 801(d)(2) and Federal Rule of Evidence 801(d)(2). Arkansas Rule 801(d)(2) provides that a statement is not hearsay if:

> The statement is offered against a party and is (i) his own statement, in either his individual or a representative capacity, (ii) a statement of which he has manifested his adoption or belief in its truth, (iii) a statement by a person authorized by him to make a statement concerning the subject, (iv) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (v) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

And Federal Rule 801(d)(2) provides that a statement is not hearsay if:

> The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

It is obvious that the only difference between these two rules is that the Arkansas rule uses (i), (ii), (iii), (iv), and (v) to designate its categorical references, and the Federal rule uses (A), (B), (C), (D), and (E).

Next, Arkansas Rule of Evidence 806 provides:

> If a hearsay statement, or a statement defined in Rule 801[d] (2) (iii), (iv), or (v), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.

And the Federal Rule of Evidence 806 provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay state-

ment, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement had been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.

Again, it is obvious that the only difference between these two rules is the method used to designate categorical references.

Now it is true that the Arkansas Rule 806 provides that "If a hearsay statement or a statement defined in Rule 801[d](2) (iii), (iv), or (v), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." This, of course, leaves out [d](2)(i) (a party's own statement, in either his individual or representative capacity) and [d](2)(ii) (a statement of which he has manifested his adoption or belief in its truth). We are here concerned with (ii), the "adoptive admission" provision, which would seem to be excluded from the provisions of Rule 806 which permit an attack on the declarant's credibility.

Let us examine, however, what that would mean in the instant case. It would mean that a bystander could testify that the appellant's husband made a statement that appellant was at fault, and that the appellant did not deny the statement or object to it; however, if her husband had made a statement to someone else that he did not say what the bystander said the husband said — the appellant could not show that her husband had made the inconsistent statement. In other words, she is tarred with the "hearsay" statement of what her husband said because the rules of evidence will not let her use a "hearsay" statement of what her husband said in her favor to rebut the one used against her. Surely this is not what is contemplated when Arkansas and Federal Evidence Rule 102 both provide that: "These rules shall be constructed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence, to the end that the truth may be ascertained and proceedings justly determined."

A close examination of the matter reveals that the above scenario is not what was contemplated by the rules. In the trea-

tise on evidence, 2 *McCormick on Evidence* § 324.2 at 370-71 (1992), there is a discussion under the heading of "Impeachment of Hearsay Declarant." Federal Rule 806 is quoted — and we need to notice that the Rule begins — "When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, . . . ." Also we need to remember that the categories set out in Rule 801(d)(2) are defined as "not hearsay." However, the inclusive language at the beginning of Rule 806 means that rule would also apply to a hearsay statement even if it was not a statement defined in Rule 801(d)(2). The discussion in *McCormick* begins as follows: "When a hearsay statement is introduced, often the declarant does not testify. It is, however, ultimately the declarant's credibility that determines the value that should be accorded to the statement. How should that credibility be attacked, or where appropriate, supported?" Federal Rule 806 is then quoted, and the answer to the above question is stated: "The rule treats the hearsay declarant as effectively as a witness for impeachment purposes."

The discussion in *McCormick* then continues with this statement: "The rule covers both statements admitted under hearsay exceptions and admissions, but does not apply to statements that are nonhearsay and not admitted for their truth." The first half of that statement is footnoted as follows:

> Literally the rule appears to cover only representative admissions under subparagraphs (C) and (D) of Rule 801(d)(2) and co-conspirator statements under subparagraph (E). However, the legislative history makes clear that there was no intention to prohibit impeachment of declarants making admissions under subparagraphs (A) and (B). The Senate Judiciary Committee believed that it was "unnecessary to include[] statements contained in rule 801(d)(2)(A) and (B) — the statement by the party-opponent himself or the statement of which he has manifested his adoption — because the credibility of the party opponent is always subject to attack on his credibility." Senate Comm. on Judiciary, S.Rep. No. 1277, 93d Cong., 2d Sess. 22 n 1 (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 7051, 7068 n. 1.

We need to note again at this point that 801(d)(2)(A) and (B) read the same as Arkansas Rule of Evidence 801(d)(i) and (ii). Thus, under the intent of Congress, and according to *McCormick*, these two categories — (A) and (B) in the Federal Rule and (i) and (ii) in the Arkansas Rule — are not meant to be exceptions to the situation under Rule 806 which allows "the credibility of the declarant" to be attacked. This would solve the question involved in this case because the application of Rule 806 allows — as the rule states and *McCormick* notes — that "the credibility of the declarant may be attacked, and if attacked it may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." So after John Goodsell testified to what the appellant's husband said — if this makes her the declarant of that statement because she adopted it — the rule would allow her to support her credibility by putting into evidence the statement made by her husband to the insurance investigator which is inconsistent with what Goodsell testified the husband said but which is consistent with what the appellant testified the husband said. However, a more comprehensive answer to the issue now under discussion is found in *McCormick's* statement, *supra*, that "the rule treats the hearsay declarant as effectively as a witness for impeachment purposes."

The case of *United States* v. *Price*, 792 F.2d 994 (11th Cir. 1986), cited in a footnote to the above discussion in *McCormick*, supports McCormick's statement. In that case, the appellant Price was convicted of illegal distribution of a controlled substance. He had delivered hashish oil to Jimmy Carbone, a confidential informant, to be delivered to Carbone's narcotics connections for money. Carbone died before the trial, but tape recordings of telephone conversations between Price and Carbone were introduced into evidence. Price's conviction was affirmed and that part of the opinion applicable to the instant case is as follows:

> The defense argues that, according to *United States* v. *Lemonakis*, 485 F.2d 941 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974), if Price adopted the statements of Carbone such that they are admitted as adoptive admissions, then Carbone may be impeached under FRE 806. In the *Lemonakis* case, a confidential informer similarly died before trial, and the taped recordings between him and the defendants were offered,

as here, to put into context the statements of the defendant. The statements were also offered as adoptive admissions by the defendant of the statements made by the confidential informant. As to those statements, the court said: "(t)he only incriminating statements of the informant to be taken as true are those which, in the judgment of the jury, were adopted by appellant, and while that does make the informant's statements hearsay evidence, their adoption by appellant brings them within a long-recognized hearsay exception." *Id.* at 949. Though this case is not controlling, *it is persuasive for the proposition that the utterer of words which have been adopted as an admission by the defendant, is subject to impeachment under FRE 806.*

In the present case however, the statements of Carbone were not admitted as adoptive admissions of the defendant Price. The single purpose of admitting the Carbone statements was to make understandable to the jury the statements made by Price himself. The statements are not hearsay, as they were not offered for the truth of the matter asserted, and were not what is defined as not hearsay within the meaning of FRE 801(d)(2)(C), (D) or (E). Therefore, the appellant's Sixth Amendment right of confrontation and to present a defense was not violated by the introduction of the tapes into evidence.

*Id.* at 997 (emphasis added).

In regard to the instant case, the pivotal language in the *Price* opinion states that the *Lemonakis* case is "persuasive for the proposition that the utterer of words which have been adopted as an admission by the defendant, is subject to impeachment under FRE 806." That, of course, is the issue now under discussion. And while it may be arguable that this language in *Price* is dictum, it is nevertheless instructive on the point here involved.

Without going too far astray, the question naturally comes to mind as to why the statements of Carbone, which the appellate court in *Price* said were not admitted as adoptive statements, would not be subject to impeachment even though they were not offered for the truth of the matter asserted. The answer given in 3 Saltzburg, Martin and Capra, *Federal Rules of Evidence Manual* Rule 806, at 1674 (6th ed. 1994), is as follows:

If a hearsay statement is introduced into evidence because it qualifies as an exception to the hearsay rule, it is being introduced for its truth. This makes the credibility of the hearsay declarant important. Thus, Rule 806 provides that the credibility of the declarant can be attacked and supported just as if the declarant is on the stand testifying. In other words, the ways in which a witness can be impeached and rehabilitated are also the ways in which a hearsay declarant can be impeached and rehabilitated.

If a declarant's statement is not being offered for its truth, then it is not hearsay, and impeachment of the declarant is not permitted under Rule 806. This makes sense, because if the statement is not being offered for its truth, then there is no concern about the credibility of the declarant, and there is no need for evidence on that subject.

Of course, there is no question here as to the purpose of the introduction by the appellees of Goodsell's testimony about the statement that he said the appellant's husband made regarding the accident being the appellant's fault. It was obviously introduced for the truth of the statement made by the husband. It was offered and allowed as an adoptive admission of the appellant. As we have already noted, before the adoption of our Rules of Evidence we recognized that a "tacit admission" was admitted for the truth of the matter asserted as an exception to the hearsay rule. *Wilson* v. *City of Pine Bluff, supra.* And now, under our Evidence Rule 801(d)(2)(ii), this statement is admitted for the truth of the matter asserted under the rule which provides that it is not hearsay. Therefore, it seems clear that, as the opinion in *Price* states, "the utterer" of words which have been adopted as an admission by the [appellant here] is subject to impeachment under Rule 806. *See also* the "Notes of Advisory Committee on Proposed Rules" following Fed. R. Evid. 806 (West Publishing Company) which state:

The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified.

*Compare* 4 Weinstein and Berger, *Weinstein's Evidence* § 806[01], at 806-6 (1994) where it is stated:

Rule 806 proceeds on the theory that triers of fact will be most likely to reach a just determination if all pertinent evidence is made available to them. Confronted with a choice of limiting the impeachment of declarants in a variety of situations, the Advisory Committee chose to eliminate all foundation requirements, stating that "[t]he declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified."

In *United States* v. *Moody*, 903 F.2d 321 (5th Cir. 1990), the appellant Moody was charged and convicted of mail and wire fraud as a result of using his influence to siphon, for his personal benefit, a large sum of money from a charitable trust. His conviction was reversed because the trial court would not allow him to introduce evidence designed to impeach the reputations for veracity of two co-conspirators who had "fled the jurisdiction and remained at large during the trial" but who had effectively "testified" by means of hearsay declarations. The appellate court said the trial court "harbored the misconception, reinforced by the government, that hearsay declarants cannot be impeached if they fail to testify at trial." The appellate court said "this belief is squarely contradicted by Fed. R. Evid. 806" and concluded by saying that "*a hearsay declarant is deemed to be a witness whose credibility is subject, in fairness, to impeachment.*" (Emphasis added.) *Id.* at 328. The case of *United States* v. *Graham*, 858 F.2d 986 (5th Cir. 1988) *cert. denied*, 489 U.S. 963, is cited in support of this statement. We should note that we think the reference in *Moody* to "hearsay declarant" simply means a witness who gives evidence that is hearsay but which is admissible under some exception to the hearsay rule. In *Moody* that exception came under Federal Rule of Evidence 801(d)(2)(E) which pertains to a statement made by a co-conspirator.

So we are told by the notes of the Advisory Committee on the proposed Federal Rules of Evidence that the declarant of the hearsay statement "should in fairness be subject to impeachment." The commentary in *Weinstein's Evidence* and the cases of *United States* v. *Moody* and *United States* v. *Graham, supra,* agree. In the case now before us, the declarant of the hearsay statement was the appellant's husband; therefore, in fairness, the

evidence which would show that he had made a statement that was inconsistent with the one Goodsell said he made should have been admitted.

Moreover, in *United States* v. *Wuagneux*, 683 F.2d 1342 (11th Cir. 1982), *cert. denied*, 464 U.S. 814, the appellant was convicted on several charges, one of which was tax evasion. At trial he wanted to introduce a statement, allegedly made by his accountant to another accountant, that the failure of appellant to report income from some leases was the accountant's fault. However, the accountant who made the statement was under grand jury investigation and claimed his privilege against self-incrimination to any questions about his work for the appellant. Accordingly he was declared unavailable and the appellant introduced his statement through the other accountant under Fed. R. Evid. 804(b)(3) (statement against interest; declarant unavailable). On rebuttal the government put an IRS agent on the stand, and he testified that the appellant's accountant had told the agent that before the tax returns in question were filed the appellant had disavowed any interest in the leases in question. As to the appellant's argument that this was error, the appellate court said this testimony was "plainly admissible, as an inconsistent statement of a declarant, to impeach [the credibility of the appellant's accountant] under Federal Rule of Evidence 806." *Id.* at 1357.

And in *State* v. *Kline*, 464 N.E.2d 159 (Ohio App. 1983), the *Wuagneux* case was said to have been persuasive in the interpretation of an Ohio Rule of Evidence which was said to be identical to Fed. R. Evid. 806. In *Kline* the appellant was convicted of felonious assault upon Doug Emmons who was unavailable as a witness at the time of trial. A statement by Emmons that the appellant "tried to kill me — call the cops," made as he wrested a gun from the appellant in a crowded bar, was testified to by Kelly Taylor who was in the bar at the time. Her testimony was allowed under Ohio Rule of Evidence 803(2) (excited utterance). The appellate court said this testimony was properly admitted as an exception to he hearsay rule; however, it said the trial court erred in not allowing in evidence written statements given by Emmons to the police in which he said the appellant "pulled a gun on me. I took it away, and the cops came." In its opinion the court said the subsequent written statements, by omitting a material fact, contradicted the prior excited utterance to which Taylor testified.

The court concluded as follows:

> Accordingly, the trial court erred in excluding Emmons' written statements as "hearsay" and in not allowing cross-examination by defense counsel into those statements. Inasmuch as the trial court received in evidence Emmons' hearsay statement through Taylor's testimony, it committed error prejudicial to appellant by excluding Emmons' inconsistent written statements offered to impeach him. Reversal is therefore required. Appellant's first assignment of error is well-taken.

*Id.* at 165.

In summary, we are convinced, from our study of the material which we have discussed, that as applied to the facts and circumstances of this case Ark. R. Evid. 806 allows the appellant to put into evidence the inconsistent statement that she said her husband gave to the insurance investigator. Although no case has been found which has specifically adjudicated the issue either way, the language in the *Price* case, *supra*, is certainly supportive of our view. In addition, from the other authority we have cited, we think it is clear that the language in Rule 806 does not limit its application to attacking or supporting only the statements defined as not hearsay in Rule 801(d)(2). To the contrary, the Rule 806 phrase "a hearsay statement or a statement defined in Rule 801(d)(2)(iii), (iv), or (v)" has been held to include excited utterances and statements against interest, each of which is a so-called hearsay statement that is not mentioned in Rule 801(d)(2) (iii), (iv), or (v). It is also clear that the word "declarant" as used in Rule 806 is "deemed to be a witness whose credibility is subject, in fairness, to impeachment." Obviously, in this case, this would be the appellant's husband. However, Rule 806 specifically states that a declarant's credibility may be attacked *or supported*; therefore, even if the declarant here is the appellant, she should be allowed under Rule 806 to support her credibility by putting into evidence the statement made by her husband to the insurance investigator as that statement was consistent with her own testimony.

Reversed and remanded.

Bullion and Digby, Special Judges, agree.

COOPER, J., concurs.

JENNINGS, C.J., and ROBBINS, J., dissent.

PITTMAN and ROGERS, JJ., not participating.

JOHN E. JENNINGS, Chief Judge, dissenting. While I agree with the majority's holding that the trial judge did not err in admitting the adoptive admission, I cannot agree that the trial court erred in refusing to admit a statement made to insurance investigators. In my view the judgment of the circuit court should be affirmed.

As a threshold matter, the majority holds that no proffer of the evidence was necessary because its substance is apparent. I cannot agree.

The only clue to be found in the record as to the nature of the evidence is the statement of counsel that it is somehow "inconsistent." We cannot tell from the record whether the inconsistency, if any, was material. We cannot even tell whether the statement referred to was made by Mr. Medley or Mr. Goodsell. I cannot agree that under the circumstances presented, the proffer required by Rule 103 was unnecessary. Compare *Patterson* v. *State*, 318 Ark. 358, 885 S.W.2d 667 (1994).

Even if no proffer was necessary I am still not persuaded that the trial court erred. As the majority concedes, Rule 806 of the Arkansas Rules of Evidence pointedly excludes from its purview statements admitted as adoptive admissions. The majority says that this omission is because of the recognition that the credibility of a party opponent is always subject to attack. In this case, however, counsel was seeking to attack the credibility of either Mr. Goodsell or Mr. Medley, not the testimony of her party-opponent.

Without knowing more about the statement and who made it, I cannot say the trial judge erred in refusing to admit it. I am authorized to state that Judge Robbins joins in this dissent.