Jerry PRYOR *v.* STATE of Arkansas

CA CR 99-726                                    27 S.W.3d 440

Court of Appeals of Arkansas
Divisions III, IV, and I
Opinion delivered September 20, 2000

*Alvin Schay*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Jerry Pryor was convicted in a Howard County jury trial of robbery and sentenced as an habitual offender to forty years in the Arkansas Department of Correction. On appeal he argues that the trial court erred in: 1)

refusing to allow him to impeach one of the State's witnesses with a prior inconsistent statement; and 2) denying his motion to suppress an in-court identification by the victim. We agree that the trial court erred in refusing to allow evidence of the prior inconsistent statement, and reverse and remand for a new trial.

Pryor does not challenge the sufficiency of the evidence, only two evidentiary rulings. Accordingly, only a brief recitation of the facts is necessary. On the night in question, the victim, Quirimo Morales, was sleeping in his car outside his apartment in Nashville. According to Morales's testimony, he had visited his daughter in Hot Springs earlier that morning until 1:00 a.m., then had visited a cousin in Glenwood, and arrived back at his residence at approximately 5:00 a.m. At about 5:30 a.m., he was awakened from a sound sleep by a punch in the jaw, and a black man, whom he had never seen before but subsequently identified in a police photo line-up as Pryor, was in the process of stealing his wallet. According to Morales, the assailant threw the wallet down when he discovered that it had no money in it and ran away. Jeffrey Hubbard, a neighbor, claimed that he witnessed the robbery and identified Pryor as the robber.

The first point dealt with cross-examination of Hubbard, one of the State's witnesses. On direct, Hubbard admitted that he was convicted of aggravated assault in 1997 and was on probation at the time of the incident. He claimed that he was aware that Morales had parked outside, and when he looked out of his window to check on him, he saw a tall black man standing over him. According to Hubbard, he recognized Pryor, an acquaintance of thirteen or fourteen years, and called out to him. Pryor then turned and ran down the street. Hubbard stated that he did not notice an odor of alcohol about Morales. Hubbard also admitted that he had talked to Robert Willis after the robbery, but denied that he told Willis that Morales was drunk and passed out in the car on the morning of the robbery. Hubbard also admitted that he had a run-in with Pryor about a month before the robbery.

Robert Willis was called by Pryor as an alibi witness. Willis testified that he saw Pryor while he was on the way to work, between 5:00 a.m. and 5:20 a.m. He then was questioned about encountering Hubbard after the robbery. He admitted that he talked to Hubbard. When Pryor's trial counsel attempted to ask the

question: "And what did [Hubbard] tell you about the condition that Quirimo Morales was in the morning that . . .." The State objected on hearsay grounds. Pryor argued that the question went to Hubbard's credibility and, among other things, that he was attempting to elicit a prior inconsistent statement. The trial court sustained the objection, stating that it did not fall under one of "twenty-eight" hearsay exceptions.

The second point deals with the suppression of the identification testimony by the victim, Quirimo Morales. In a pretrial hearing on Pryor's motion to suppress the identification, Officer Thomas Free of the Nashville Police Department testified that Jeffrey Hubbard contacted him and told him who had robbed Morales. He subsequently went to Aero Metalcraft where he interviewed Hubbard and asked Hubbard and Morales to look at a photo lineup. He stated that both Hubbard and Morales picked Pryor out of the lineup, and that Hubbard did not influence Morales's selection in any way. The photo array was not abstracted. Morales testified that he picked Pryor out because he recognized him from the robbery. He also stated that he had never seen Pryor before the robbery, but that he had seen him a few days after the robbery when he was with Hubbard, and that Hubbard had pointed Pryor out and said, "Hey that's the guy who robbed you." However, Morales claimed that he recognized Pryor's face from the robbery and only asked Hubbard for Pryor's name. Morales also claimed that he was sleeping in his car because he was comfortable, and he denied being intoxicated. He stated that he was awakened when Pryor punched him in the jaw. By that time, Pryor had already taken his wallet. According to Morales, he viewed Pryor for "three to five minutes," but he later revised downward his estimate to two to three minutes. Morales also denied that it was too dark to see Pryor clearly, and he stated that his efforts to describe his assailant were hampered by his inability to speak English.

At trial, Morales made an in-court identification of Pryor. However, during his testimony, Morales's story changed. He admitted that he had been drinking, but had not admitted it to the police because he already had two DWIs. He also stated that he had seen Pryor two times since the robbery. Pryor did not object to the admission of Morales's identification testimony until his directed verdict motion.

Pryor first argues that the trial court committed reversible error when it refused to allow the defense counsel to impeach a State witness, excluding as hearsay testimony by Robert Willis concerning a statement that Hubbard purportedly made to Willis that Morales was intoxicated at the time of the robbery. Citing *Allen v. State*, 277 Ark. 380, 641 S.W.2d 710 (1982), he contends that the statement was admissible pursuant to Ark. R. Evid. 613 as a prior inconsistent statement. This argument is persuasive.

Rule 613 of the Arkansas Rules of Evidence states:

> (a) *Examining Witness Concerning Prior Statement.* In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

> (b) *Extrinsic Evidence of Prior Inconsistent Statement of Witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 501 (d)(2).

■ ■ Citing *Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995), the State contends that this argument is not preserved for appellate review because Pryor failed to proffer Willis's testimony. However, the failure to make a formal proffer is not fatal to this point because it is well settled that an offer of proof is not necessary when the substance of the evidence sought to be introduced is apparent from the context within which the questions are asked. *Billett v. State*, 317 Ark. 346, 877 S.W.2d 913 (1994); *Hill v. State*, 54 Ark. App. 380, 927 S.W.2d 820 (1996). *See also Lewis v. Gubanski*, 50 Ark. App. 255, 905 S.W.2d 847 (1995). Here, the substance of the evidence is readily apparent from the question posed to Hubbard, his denial, the subsequent questioning of Willis, and defense counsel's argument to the trial court, in which he stated: "I asked Mr. Hubbard if he didn't tell Mr. Willis that he was drunk and in fact he did, and Mr. Willis can tell that."

■ The State also contends that because Pryor did not actually say that the testimony was admissible under Rule 613(b), this

argument is raised for the first time on appeal. However, Pryor did argue that he was attempting to elicit evidence of a prior-inconsistent statement, a direct reference to Rule 613(b), so this argument was appropriately made to the trial court.

■■■ A trial court is accorded wide discretion in evidentiary rulings, and will not be reversed on such rulings absent a manifest abuse of discretion. *Dansby v. State*, 338 Ark. 697, 1 S.W.3d 403 (1999). In *Fowler v. State*, 339 Ark. 207, 219, 5 S.W.3d 10, 16 (1999), the supreme court recently stated:

> As a general rule, all relevant evidence is admissible. Ark .R. Evid. 402. Relevant evidence is any evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Ark .R. Evid. 401. A witness's credibility is always an issue, subject to attack by any party. *Dansby v. State* 338 Ark. 697, 1 S.W.3 403 (1999); Ark .R. Evid. 607. The scope of cross-examination extends to matters of credibility. Ark .R. Evid. 611. A matter is not collateral if the evidence is relevant to show bias, knowledge, intent, or interest. *See Dansby v. State, supra; Arthur v. Zearley,* [337 Ark. 125, 992 S.W.2d 67 (1999)]; Pyle v. State, 314 Ark. 165, 862 S.W.2d 833 (1993); *Goodwin v. State*, 263 Ark. 856, 568 S.W.2d 3 (1978). Proof of bias is "almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, [469 U.S. 45, 52 (1984)]. In other words, matters affecting the credibility of a witness are always relevant.

The *Fowler* court further stated, "This court has traditionally taken the view that the cross-examiner should be given wide latitude because cross-examination is the means by which to test the truth of the witness's testimony and the witness's credibility." 339 Ark. at 220, 5 S.W.3d at 17 (*citing Wilson v. State*, 289 Ark. 141, 712 S.W.2d 654 (1986)). Moreover, although *Allen v. State, supra,* was also a Rule 615 case, in disposing of one of the State's arguments seeking to support the exclusion of evidence, the supreme court stated that prior inconsistent statements are admissible because they are not hearsay.

■■ Here, the State's case boiled down to the testimony of two eyewitnesses, Morales and Hubbard. Morales admitted that he committed perjury in the suppression hearing, had been drinking

on the night of the alleged robbery, and had told what was pretty much an improbable story. However, this improbable tale was corroborated by Hubbard. Hubbard's tale was also improbable, but it backed up Morales's. Consequently, the impeachment of Hubbard's credibility would have further weakened the State's case. Exposing Hubbard's willingness to lie under oath was an indispensable part of Pryor's defense, and the trial court erred in excluding the testimony. Finally, under the circumstances of this case, because it rested entirely on the credibility of the two witnesses, we reject the State's contention that the exclusion of this testimony could be harmless error.

Pryor also argues that the trial court committed reversible error in denying his motion to suppress the in-court identification by Morales, based on suggestive procedures and the testimony of Morales. He contends that Morales's identification was unreliable, primarily because his testimony varied significantly between what he presented at the suppression hearing and what he presented at trial. Further, citing *Bowen v. State*, 297 Ark. 160, 761 S.W.2d 148 (1988), he asserts that a review of the first two of the six factors listed by the supreme court in that case supports the conclusion that he carried his burden of proving there is a very substantial likelihood of irreparable misidentification. Specifically, he contends that Morales's opportunity to view him was only seconds, not the two or three minutes that Morales testified to. Further, he asserts that at 5:30 a.m., it was dusk and a tree shaded a nearby street light. Regarding the accuracy of the prior description, Pryor argues that Morales only stated that it was a "black man." Finally, he contends that his alibi witnesses should factor into the totality of the circumstances. However, we cannot reach the merits of this issue because it is not preserved for review. Pryor failed to object to Morales's in-court identification until after the State had rested. Failure to object to an in-court identification prevents the issue from being considered on appeal. *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995).

Reversed and remanded for a new trial.

ROBBINS, C.J. STROUD, GRIFFEN, and MEADS, JJ., agree.

JENNINGS, KOONCE, CRABTREE, and BIRD, JJ., dissent.

S AM BIRD, Judge, dissenting. I believe that this case should be affirmed because Pryor did not proffer the testimony that he argues was erroneously excluded and, therefore, has not preserved for appeal the issue upon which the majority relies in reversing and remanding.

The majority has reversed and remanded this case, agreeing with Pryor's argument that the trial court erred in failing to permit him to introduce into evidence, through the testimony of Robert Willis, an alleged prior inconsistent statement of Jeffrey Hubbard. Although I agree that Pryor should have been permitted to introduce the prior inconsistent statement made by Hubbard through the testimony of Willis, I do not believe the point was preserved for appeal. In order to preserve the error for appeal, it was incumbent upon Pryor to proffer the alleged inconsistent statement to which Hubbard would have testified. Without that proffer, we are unable to determine what statement Pryor alleges that Hubbard may have made that was allegedly inconsistent with his earlier statement. Unless statements forming the basis of an Ark. R. Evid. 613 argument are proffered, their exclusion is not an issue that is preserved for appellate review, *Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995).

The majority opinion relies on *Billett v. State*, 317 Ark. 346, 877 S.W.2d 913 (1994), *Hill v. State*, 54 Ark. App. 380, 927 S.W.2d 820 (1996), and *Lewis v. Gubanski*, 50 Ark. App. 255, 905 S.W.2d 847 (1995), to support its conclusion that Hubbard's alleged inconsistent statement is apparent. I do not agree that those cases support the majority's position. In *Billett*, the excluded testimony was apparent because it had been the subject of the State's motion in limine to exclude evidence that a witness had been pregnant and had had three abortions. The court had granted the motion on grounds that such evidence was not relevant. When Billett's attorney sought to elicit such evidence from the witness, the State objected, and the court sustained the objection. On appeal, Billett contended that the court's exclusion of that evidence was erroneous, but the State argued that the issue had not been preserved for appeal because the witness's testimony had not been proffered. The supreme court held that the issue was preserved, notwithstanding Billett's failure to proffer the witness's testimony, because the testimony excluded was set out by the prosecutor in the State's motion in limine and clearly understood by the judge.

In *Hill, supra,* the evidence excluded by the trial court was also the subject of a motion in limine by the State. There, Hill desired to impeach the State's witness, a police officer, through testimony that the officer had left the police force after filing a false police report and giving a false statement about his police car having been stolen. The court granted the State's motion in limine. On appeal, the State contended that since Hill did not proffer the excluded testimony, the court's error in excluding it was not preserved. We held that the issue was preserved because, "[u]nder these facts, there is no question about the substance of the testimony." *Hill,* 54 Ark. App. at 381, 927 S.W.2d at 822.

Similarly, in *Lewis v. Gubanski, supra,* it was held that a proffer of a prior inconsistent statement was unnecessary to preserve for appeal the trial court's erroneous exclusion of a prior inconsistent statement where the substance of the excluded testimony had been made known to the judge by appellant's lawyer during the testimony, in chambers, of another witness. The court noted that, "taking into consideration all the above circumstances, we cannot agree that the substance of the evidence . . . was not known to the trial judge."

The cases relied upon by the majority bear no similarity to the case at bar. In the case now before us, there was no motion in limine or in chambers hearing that would have had the effect of apprising the court of the substance of Hubbard's alleged prior inconsistent statement. The substance of Hubbard's alleged prior inconsistent statement, if there was one, is not at all apparent. While we can speculate that Pryor's attorney thought he might know what the answer to his question would be (or else he might not have asked it), we have no way of knowing whether Willis would or would not have testified that Hubbard had earlier told him that the victim was intoxicated when he was robbed.

Contrary to the majority's assertions, the substance of Willis's testimony is certainly not apparent from the question that was asked of Hubbard. When Hubbard was asked whether he had earlier made a statement to Willis that Morales was drunk and passed out in his car on the morning he was robbed, Hubbard stated twice, unequivocally, that, "I did not tell him that." According to the theory of the majority opinion, we should presume that because Hubbard twice denied making the statement, then when Willis was

asked whether Hubbard made the statement, Willis must have been about to contradict Hubbard.

The substance of the excluded testimony is not apparent from defense counsel's argument to the court. Defense counsel merely argued that he should be permitted to ask the witness about Hubbard's alleged prior inconsistent statement. As I have already stated, I agree, but in order for the defense counsel to preserve the point for this court to address, he should have proffered the testimony. However, at no time did defense counsel advise the court of what he expected Willis's testimony to be.

The effect of the majority opinion is to extend the holdings in *Billett* and *Hill, supra,* far beyond holding that a proffer need not be made to preserve an issue for appeal where the substance of the testimony is clear. Under the holding of the majority opinion, a proffer will no longer be required if the appellate court can speculate as to what the excluded testimony might have been had defense counsel received the answer for which he had hoped.

I respectfully dissent.

JENNINGS and CRABTREE, JJ., join.

K MAX KOONCE, II, Judge, dissenting. I agree with the dissenting opinion of Judge Bird in his assertion that Pryor failed to proffer the testimony that was wrongfully excluded from evidence, and that this omission by Pryor disqualifies the issue from consideration on appeal. To challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so we can review the decision, unless the substance of the evidence is apparent from the context. Ark. R. Evid. 103(a)(2).

I further dissent from the decision announced in the majority opinion due to harmless error. Although I agree that the trial court erred in precluding appellant from impeaching Jeffrey Hubbard with a prior inconsistent statement, I think the error was harmless in light of all the evidence before the jury. When the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm. *See Byrd v. State,* 337 Ark. 413, 992 S.W.2d 759 (1999); *Abernathy v. State,* 325 Ark. 61, 925 S.W.2d 380 (1996).

The jury heard the victim's testimony at trial in which he admitted that he had been drinking on the morning of the robbery, which was inconsistent with his pretrial statement and inconsistent with Hubbard's trial testimony. Thus, the jury had before it evidence that would call into question both the victim's and Hubbard's credibility. Regardless of the discrepancies, inconsistencies, and contradictory evidence, matters of credibility are for the jury to determine. *See Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996). In the instant case, the victim unequivocally identified appellant as the person who robbed him. Our courts have consistently held that the testimony of one eyewitness is sufficient to sustain a conviction. *See Rawls v. State*, 327 Ark. 34, 937 S.W.2d 637 (1997). Accordingly, I would affirm.