JOHN DAN KEMP, Chief Justice
Appellant James Eugene Sharp was convicted of rape and sentenced to a term of life imprisonment. For reversal, Sharp contends that the circuit court abused its discretion when it granted the State's motion in limine to exclude evidence that the victim, B.R., had filed a civil lawsuit against the owners of an apartment complex where the rape occurred. We affirm.
I. Facts
The following facts are adduced from the testimony and evidence at trial. On September 25, 2013, B.R. returned to her apartment in Hot Springs after work to pack for her upcoming move. After packing, B.R. took a bath, got in bed, and fell asleep while watching television. Later, she awakened with a hand over her mouth and heard a voice say, "If you scream, I'll kill you." B.R. saw a man, later identified as Sharp, standing in front of her nightstand and holding an L-shaped tool that was approximately twelve inches long. Sharp ordered B.R. to take off her clothes and lie down on the bed, and she complied. Sharp then inserted his penis into B.R.'s mouth and vagina without her consent.
After Sharp ejaculated, B.R. asked him if she could go clean up. Sharp followed B.R. to the bathroom that adjoined her bedroom, and he stood at the door while she wiped herself with a washcloth. He took the washcloth from B.R., wiped himself with it, and left it on the lavatory. Sharp then allowed B.R. to put on her clothes. Sharp picked up the tool from the nightstand and told B.R. to follow him to the guest bedroom where he had left his pants and underwear. Sharp got dressed and then walked to the front door. Before leaving the apartment, Sharp told B.R. that he would kill her if she told anyone what had happened.
*880 After Sharp left, B.R. shut and deadbolted the door, grabbed her gun and cellphone, barricaded herself in the closet, and called 911. Deputy Jerry Simpson of the Garland County Sheriff's Office responded to B.R.'s call. While securing the scene, Simpson noticed an open window in the guest bedroom and discovered smudges on the outside of the window that were consistent with a handprint. He closed the window and then collected sheets and the washcloth that B.R. and Sharp had used to clean up. Medical personnel transported B.R. to the hospital where a rape kit was performed. A pelvic examination revealed that B.R. had a small vaginal-wall tear and that her vagina was red and inflamed.
B.R.'s rape kit, sheets, washcloth, and clothing were submitted to the Arkansas State Crime Laboratory for testing. Sperm cells were detected on the vaginal and rectal swabs and on B.R.'s underwear. The vaginal swabs contained DNA consistent with the DNA profiles of B.R. and Sharp.
At trial, Sharp testified that he did not know B.R., that he did not recall how he met her, that he did not remember crawling through her window, and that he did not recall having sexual contact with her. He also testified that if he did have sex with B.R., then it was consensual. After hearing all the evidence, the jury returned a verdict of guilty on the charge of rape, and Sharp was sentenced to life in prison.
II. Evidence of Civil Lawsuit
Sharp contends that the circuit court abused its discretion when it granted the State's motion in limine to exclude evidence that B.R. had filed a civil lawsuit against the owners of the apartment complex where the rape occurred. The State made its motion at a bench conference before trial:
THE STATE : Your Honor, there's an individual that came in the courtroom and said he represented the apartment complex. There is a current lawsuit pending between the victim and the apartment complex. We'd ask in limine that no mention of that lawsuit happen. That's not relevant to any issues in this trial and any relevance it might have would be substantially outweighed by the danger of unfair prejudice pursuant to Rule 401 and 403 of the Rules of Evidence.
THE COURT : Any objection?
DEFENSE COUNSEL : Well, Your Honor, from talking to counsel-and his name escapes me- I've met him a few times, my understanding was that the lawsuit was initiated around the approximate time that she has alleged this rape has occurred. Like they had filed a lawsuit and then the next day she has claimed the alleged assault and has filed suit against I guess the apartment complex as well. And I think that could go to possible bias or credibility of the witness.
THE STATE : She was actually buying out of her apartment complex and had paid to buy out. They just kind of jumped the gun and served her with it, so the lawsuit hadn't actually happened.
Now this lawsuit the guy's here for has to do with after the fact. This happened after the rape.
THE COURT : Yeah, how is it relevant to this case? This is a DNA CODIS hit.
DEFENSE COUNSEL : Well, she's-depending on whether or not it's consensual or not. If she's claiming it's no longer consensual, for the purpose of defeating or at least mitigating her liability on this lawsuit I think that can go to her credibility.
THE COURT : I disagree. That's overruled. The motion in limine is granted. We're *881 not to make any mention of the civil case and he really shouldn't be talking to anybody.
Sharp asserts that evidence of B.R.'s civil suit was relevant to the issues of bias and credibility because a guilty verdict in the criminal case might aid her recovery in the civil matter. The State contends that Sharp did not preserve this issue for appeal because he failed to proffer the evidence that he sought to have admitted. Sharp concedes that he did not proffer the evidence; however, he contends that a proffer was unnecessary because the substance of the excluded evidence is apparent. Sharp claims that B.R.'s civil suit against the apartment complex was based on the facts giving rise to the criminal charge against him. Accordingly, Sharp contends that the circuit court should have allowed evidence of the civil suit because it was relevant to show B.R.'s "strong pecuniary interest" in testifying against him at trial.
A proffer "permit[s] the trial judge to make an informed evidentiary ruling" and "create[s] a clear record that an appellate court can review to determine whether there was reversible error in excluding the [evidence]." Perkins v. Silver Mountain Sports Club & Spa, LLC , 557 F.3d 1141, 1147 (10th Cir. 2009). Generally, a party must make a proffer to preserve for appellate review an issue concerning the erroneous exclusion of evidence at trial. See, e.g. , Tauber v. State , 324 Ark. 47, 919 S.W.2d 196 (1996) ; Ark. R. Evid. 103(a)(2) (2017). A proffer is unnecessary, however, when the substance of the evidence is apparent from the context within which it was offered. See, e.g. , Roe v. State , 310 Ark. 490, 837 S.W.2d 474 (1992).
Here, the colloquy from the bench conference suggests that there were two lawsuits involving the apartment complex and B.R. First, it appears that the apartment complex initiated legal action against B.R. before the rape occurred. Next, it appears that B.R. filed suit against the apartment complex after the rape occurred. However, a review of the bench conference colloquy reveals that Sharp failed to articulate to the circuit court the basis for B.R.'s suit against the apartment complex, the theory of liability she had pursued, or whether she had sought money damages. In short, Sharp failed to apprise the circuit court of the relevance of the civil lawsuit.
Further, the substance of the excluded evidence is not apparent from the context within which it was offered. Absent a proffer, we are unable to determine whether prejudice results from the exclusion of evidence. Edison v. State , 2015 Ark. 376, 472 S.W.3d 474. Consequently, Sharp's failure to make a proffer of excluded evidence precludes appellate review. E.g. , Conway v. State , 2016 Ark. 7, 479 S.W.3d 1.
III. 4-3(i) Review
In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.
Affirmed.