Cite as 2024 Ark. App. 423

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-24-16

| | |
|---|---|
| JOSEPH WARREN | Opinion Delivered September 18, 2024 |
| APPELLANT | |
| | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-21-1286] |
| V. | |
| STATE OF ARKANSAS | HONORABLE H.G. FOSTER, JUDGE |
| APPELLEE | |
| | AFFIRMED |

**BART F. VIRDEN, Judge**

Joseph Warren appeals his conviction by a Faulkner County jury of two counts of aggravated robbery, one count of theft of property obtained by threat of serious physical injury, one count of felon in possession of a firearm, one count of possession of a defaced firearm, and a firearm enhancement pursuant to Ark. Code Ann. § 16-90-120 (Supp. 2023), contending that there is insufficient evidence connecting him to the crimes. Warren also asserts that the court committed reversible error in excluding evidence related to his defense that he was not involved in any of the crimes. We affirm.

## I. *Relevant Facts*

On June 7, 2023, in a second amended criminal information, Warren was charged with two counts of aggravated robbery, theft of property obtained by threat of serious physical

injury, aggravated assault, terroristic threatening, felon in possession of a firearm, one count of possession of a defaced firearm, and criminal mischief.

At a pretrial hearing, the State requested that the circuit court prohibit the defense from arguing anything regarding whether Warren's girlfriend, Sarie Metz, was involved, charged, or convicted of any crime related to the Warren's charges. Warren responded that "the jury may well conclude that Ms. Metz was an accomplice. In which case, we will be seeking to ask the Court to instruct the jury as to the effects of an accomplice's testimony and the weight of the accomplice's testimony." The State explained that it was not calling Metz as a witness, and the court determined that the issue was therefore moot, and Warren agreed with the court.

The following testimony and evidence were adduced at trial. On November 22, 2021, around 9:45 p.m., Majdi Mzahem and Kaylee Edens were closing the Highway 65 Tobacco Store in Greenbrier where they worked when a white man with blue eyes entered the store. He was wearing a mismatched gloves (one blue and one black), a pine-needle camouflage jacket with distinctive brown side panels under the arms, a camouflage hat with a distinctive triangle-leaf pattern, camouflage boots, a camouflage mask and dark blue jeans. Mzahem told the man that they were closed, but the man did not leave. Instead, the man approached the register area, pulled out a gun and forced Mzahem and Edens down on the floor. The man took the money that was in the open register and put it in his jacket pockets. He made both employees enter the office, where he took more money and transferred the money to a red bank bag. The man pistol-whipped Mzahem, broke Mzahem's phone, and instructed

Mzahem break Edens's phone. He ushered the employees out of the office back to the register area and told Edens and Mzahem to lie down while he looked through the cabinets for a safe, which Mzahem at first denied existed. Eventually, the man found the safe and, after kicking Mzahem in the head, ordered Mzahem to open it. Mzahem denied knowing the combination. The man shot a bullet into a cabinet above Mzahem's head, and Mzahem opened the safe. The man took the money from the safe and told Mzahem and Edens to lie on the floor and count to one hundred, and he threatened to kill them if they came after him. The man ran from the store. Mzahem also ran outside to his vehicle where he retrieved his handgun and shot two shots into the air. Mzahem did not see the vehicle the man was driving, but video surveillance showed a two-toned maroon and either silver- or gold-colored van or SUV driving out of the parking lot at a high rate of speed. A 9mm shell casing was found on the floor where the man had fired the weapon into the wall above Mzahem's head. Investigators took photographs of muddy shoe prints in and around the store. A trail of cash led away from the store through the parking lot.

The police had no suspects connected with the robbery until December 13, 2021, when the sheriff's office received a call regarding a welfare check at 30 Langley Trail in Conway. The home belonged to Sarie Metz, Warren's girlfriend. Warren, who was alone inside, had been staying with her for a few days, and he was refusing to come out. A maroon Ford Windstar minivan belonging to Metz, similar to the one in the surveillance video from the robbery, was parked in front of the house. After approximately half an hour of negotiation with the Special Response Team, Warren asked for ten more minutes and then

voluntarily emerged from the home. Metz consented to a search, with the exception of her dresser drawers. As the consensual search was being executed, a search warrant was obtained. In a dryer vent, investigators found a 9mm Ruger 95 pistol with a black grip and silver top, similar to the one seen in surveillance footage of the robbery. The serial numbers had been defaced; however, the serial numbers were restored by a firearm expert. The same expert matched the shell casing found in the store to the gun. The original box for the gun was found in Metz's bedroom, and the receipt in the box showed that it had been purchased by David Metz, Sarie's ex-husband, who had reported the gun, his house keys, and car keys had been stolen during a home break-in on November 22. The recovered serial numbers matched David's gun. Warren and Sarie both knew of the existence of the gun, and Sarie knew that David's house was empty on November 22. Investigators also found in Sarie's home a camouflage jacket and hat with the same distinctive patterns as those worn by the person who robbed the tobacco store and camouflage boots with the same shiny toe area as the one seen in surveillance footage. Police also found a mask and dark blue jeans. Inside a duffle bag, investigators found a blue glove and a black glove matching those worn by the person in the surveillance video, a 9mm Ruger magazine, and a red bank bag with the same logo as the one used in the robbery. Warren told investigators that he had "backpacks" and "bags" with clothes in them. Specifically, the State elicited the following testimony:

STATE:     But, Investigator Neal, he saw those bags -- the bags that had the bank bag and the black and blue glove on the table and made a reference to it in his statement; did he not? He said those bags.

WITNESS:   He said those bags. Yes, sir.

Additionally, Metz allowed investigators to search her purse, and in it they found a notebook containing a hand-drawn map of the Highway 65 Tobacco Store.

Counsel moved for a directed verdict on each of the charges, and the motion was denied. The defense rested, and the motion was renewed, which was again denied. The jury found Warren guilty of all charges, and Warren timely filed his notice of appeal.

II. *Discussion*

A. Sufficiency of the Evidence

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Holland v. State*, 2017 Ark. App. 49, 510 S.W.3d 311. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Kourakis v. State*, 2015 Ark. App. 612, 474 S.W.3d 536. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* The law makes no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. *Sanford v. State*, 2019 Ark. App. 10, 567 S.W.3d 553. Circumstantial evidence may constitute substantial evidence to support a conviction if it excludes every other reasonable hypothesis other than the guilt of the accused. *Holland*, *supra.* The question of whether circumstantial evidence excludes every reasonable hypothesis consistent with innocence is a determination for the finder of fact; on review, we must determine whether the fact-finder had to resort to speculation and conjecture to reach its decision. *Davis v. State*, 2015 Ark. App. 234, 459 S.W.3d 821. This

court views the evidence in the light most favorable to the verdict; only evidence supporting the verdict will be considered. *Id.*

On appeal, Warren contends that the evidence linking him to the crimes committed during the robbery of the tobacco store is circumstantial and does not exclude every other reasonable hypothesis other than his guilt; thus, the State failed to establish proof of his guilt beyond a reasonable doubt. We disagree.

Sufficient evidence supports the identification of Warren as the perpetrator of the robbery. Warren was in a relationship with Metz, and though he did not live with her in her home, he had recently been staying with her and slept in multiple rooms in the home. After initially refusing to exit Metz's home, Warren asked the police to allow him ten more minutes and said he would then leave the home. An officer who was present at the standoff at Metz's home testified that in his experience, a request for more time was a typical ploy to hide contraband or guns. The items related to the robbery were distributed throughout the home, including rooms that Warren admitted he slept in. Warren acknowledged to officers that they "got [his] backpacks" when one was put on the table in the interrogation room. That backpack contained the distinctive black glove and blue glove and a red bank bag, which matched the ones used in the robbery. Additionally, Warren knew that David Metz kept a 9mm Ruger in his bedroom because David had shown it to him, and David's gun was used in the robbery later that day. While the evidence that pointed to Warren as the robber was circumstantial, the jury rightly concluded that it excluded all other reasonable hypotheses. *See Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007). Only every *reasonable* hypothesis

must be excluded, not every possible hypothesis. *Moore v. State*, 2024 Ark. App. 31, 682 S.W.3d 26. The jury's verdict was not the result of speculation and conjecture, and we affirm.

## B. Excluded Evidence

Warren argues on appeal that the court erred by excluding evidence related to Sarie Metz and any other known associates she may have had; however, this issue is not preserved for our review, and we affirm.

This court will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Beard v. State*, 2020 Ark. 62, at 6, 594 S.W.3d 29, 32. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the court acted improvidently, thoughtlessly, or without due consideration. *Id.* Moreover, an appellate court will not reverse a circuit court's evidentiary ruling absent a showing of prejudice. *Id.*

Defense counsel began to ask investigator Kevin Neal of the Faulkner County Sheriff's Department, "Did you do any sort of investigation of Ms. Metz, you know, to see if she had any notes—"; the State objected, arguing that the defense was about to violate its motion in limine, and the defense clarified,

> I'm going to ask him if he did a background check on Ms. Metz and if she had any known associates who were prone to aggravated robbery.
>
> . . . .

Mr. Warren denies that he is the person. He's pled not guilty. We're here. Whether there was an investigation as to whether anybody else might have committed this crime is very relevant, and it is allowed.

7

The State argued that the line of questioning was not relevant, and the court sustained the objection. Warren did not proffer the evidence that he believed would have been relevant and admissible. A proffer allows the circuit court to make an informed evidentiary ruling and "create[s] a clear record that an appellate court can review to determine whether there was reversible error in excluding the [evidence]." *Sharp v. State*, 2018 Ark. 274, at 5, 555 S.W.3d 878, 881. Generally, a party must make a proffer to preserve for appellate review an issue concerning the erroneous exclusion of evidence at trial. *Id.*; Ark. R. Evid. 103(a)(2) (2023). A proffer is unnecessary, however, when the substance of the evidence is apparent from the context within which it was offered. *Id.*

In his reply brief, Warren asserts that his failure to proffer the evidence is not fatal to his argument because the substance of the evidence sought to be introduced is apparent from the context within which the questions are asked. Warren cites *Pryor v. State*, 71 Ark. App. 87, 27 S.W.3d 440 (2000), to support his argument. In *Pryor*, the appellant argued that the circuit court erred in refusing to allow testimony regarding a statement that "Hubbard purportedly made to Willis that Morales was intoxicated at the time of the robbery." This court held that the proffer was not necessary because

> the substance of the evidence is readily apparent from the question posed to Hubbard, his denial, the subsequent questioning of Willis, and defense counsel's argument to the trial court, in which he stated: "I asked Mr. Hubbard if he didn't tell Mr. Willis that he was drunk and in fact he did, and Mr. Willis can tell that."

71 Ark. App. at 91, 27 S.W.3d at 443.

Warren also cites *Stapleton v. State*, 2023 Ark. App. 7, at 10, 659 S.W.3d 523, 531, in which a proffer of evidence was not necessary because

> [d]uring arguments to the court, defense counsel stated, "If this person ~ and if you want me to say: 'Did she see it?' 'Yes.' 'And was Dartanya there?' 'Yes.' 'Then describe it,' I'll do that." Accordingly, we hold that Stapleton did preserve an argument regarding testimony that Stapleton was present on an occasion when Henthorn was fighting someone.

Here, unlike the two cases cited above, the substance of the evidence is not readily apparent from counsel's mere suggestion that a background check may have been done for Metz. Moreover, even if the circuit court erred in sustaining the State's objection to the line of questioning, the court's decision did not prejudice Warren in light of the overwhelming evidence connecting him to the crime, i.e., evidence that he clearly indicated to the investigators that the bag containing the distinctive gloves and bank bag belonged to him.

Accordingly, we affirm.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Law Offices of John Welsey Hall*, by: *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.